## Lane v. Dunning.

(Decided February 6, 1920.)

### Appeal from Caldwell Circuit Court.

1. Husband and Wife—Suit for Loss of Consortium—Pleading.—An allegation in a suit by a husband for the loss of consortium of his wife, that plaintiff is a man of family, consisting of himself, wife and three children, is sufficient on demurrer.

2. Husband and Wife—Custody of Children—Duress.—An allegation that defendant was wrongfully detaining plaintiff's wife and children by force and duress, and compelling them to remain away from plaintiff is sufficient to show the detention was without the wife's consent.

3. Husband and Wife—Deprivation of Consortium of Wife—Damages.—A husband is entitled to damages against one by whom he is deprived of the consortium of his wife, though such person be the wife's parent.

R. W. LISANBY for appellant.

J. ELLIOTT BAKER for appellee.

Opinion of the Court by Judge Quin—Reversing.

We will designate the parties to this appeal as they appear below. Appellant (plaintiff) is seeking damages for the loss of consortium of his wife. To the petition as twice amended, a demurrer was sustained, the petition dismissed and this appeal followed. In support of the judgment it is argued by appellee: (1) that the petition does not allege plaintiff and Ruby L. Lane (his wife) were lawfully married; the statement that she is his wife, being merely a conclusion of the pleader, and, (2) it is not alleged the wife was detained by defendant against her will or without her consent.

These in their order. First, the petition alleged that plaintiff is a man of family; the family consisting of himself, his wife and three children, naming them, and that defendant is his wife's father. This allegation is sufficient. In cases of this kind the issue is narrower and the proof of marriage is not as strict as in suits for criminal conversation, nor is direct proof of a former marriage requisite. Perry v. Lovejoy, 49 Mich. 529; Abbott's Trial Evi. 681.

If Ruby L. Lane is the wife of appellant, as alleged in the petition, this is rather a conclusive presumption of marriage, especially where this allegation is followed with the statement that plaintiff's family consists of his wife and three children.

In Farley v. Farley, 94 Ala. 501, 10 Sou. 646, an allegation in a divorce suit that on a day named the parties were lawfully and legally married was held a sufficient averment of the marriage, though followed by a statement of facts showing that plaintiff's consent was procured by fraud and deception.

Huston v. Huston, 63 Me. 184, was a divorce proceeding in which the date of the marriage was stated, as well as the name of the minister performing the ceremony, and that for more than thirty years the parties had been married and had raised a large and as plaintiff expressed it "she fondly hoped a likely family of children."

As ground for demurrer to this petition it was argued that the place of the marriage was not given; it was not alleged the minister who performed the ceremony was, at the time, authorized so to do; nor was it alleged they were lawfully married; the demurrer was overruled.

Etheridge v. Etheridge, 120 Md. 71, 87 Atl. 497. Here it was urged as an objection to the sufficiency of a bill

for divorce that it did not allege a lawful marriage between the parties. In passing on this point the court said:

"It is alleged that the parties were married, and until proof to the contrary appears, the court must assume that the marriage was a lawful one."

Addressing ourselves now to appellee's second contention. In the petition and amendments plaintiff alleged that defendant is now wrongfully detaining his said wife and children and by force and duress is compelling them to remain at his home and away from plaintiff, and is wrongfully depriving plaintiff of the companionship and consortium of his said wife and by force is restraining them from associating with him, and keeping them away from him, and is wrongfully and unlawfully poisoning their minds toward him, and alienating the affections of his wife and enticing her from him, and but for the force and duress exercised by defendant in compelling his wife to remain at defendant's home and compelling her to remain away from plaintiff she would be living with him and that the force and duress so exercised by defendant over the wife prevent her from living with the plaintiff.

Compulsion suggests the presence of force or coercion, the antithesis of acquiescence, so we find no merit in appellee's second point.

From time immemorial the law has regarded the right to the conjugal affection and society of his wife as a valuable property right, and has compelled the person who has injured it to make compensation to the husband.

Consortium means the society, companionship, conjugal affection, fellowship and assistance of the wife.

In the old English law the term signified company or society. Bigaouette v. Paulet, 134 Mass. 123, 45 Am. Rep. 307; Kinkead on Torts, sec. 446.

In an action of this kind the husband's right of action does not rest upon the ground of the loss of service, but upon the loss of society or consortium arising by virtue of the marriage contract. Bigelow on Torts, page 153.

In Jaynes v. Jaynes, 39 Hun. 40, it is said to be a property right, but

"If it be not property, in the sense in which the word property is used in the statutes cited, it is a personal right, and as the statute extends to all injuries, whether to property, person, or character, it seems to be suffi-

ciently comprehensive to embrace an injury to the right in question.''

See also Lockwood v. Lockwood, 57 Minn. 476; Warren v. Warren, 89 Mich. 123, 50 N. W. 842.

The husband being entitled to the society, comfort and assistance of his wife, whoever by alienation of her affections deprives him thereof commits a wrong against the husband for which damages are recoverable, and this, though the wrongdoer is the wife's parent. 15 Amer. & Eng. Ency., 2nd Ed. 862.

The gist of the action is not the loss of assistance, but the loss of consortium of the wife. Dietzman v. Mullin, 108 Ky. 610, 57 S. W. 247; McGregor v. McGregor, 115 S. W. 802; Prettyman v. Williamson, (Del.) 39 Atl. 731; 15 Amer. & Eng. Ency. of Law, 2nd Ed. 862. As said in McGregor v. McGregor, *supra*:

''Or, to more clearly put the matter, the issue to be tried was whether or not the appellee by wrongful acts or conduct caused the separation of appellant and his wife.''

Boland v. Stanley, 88 Ark. 562, 115 S. W. 163, presented facts similar to those found in the record before us. In its opinion the court says:

''The loss of what is termed in law 'consortium,' that is, the society, companionship, conjugal affections, fellowship, and assistance of the wife, is the principal basis for actions of this kind. Tiffany's Persons and Domestic Relations, p. 75 and authorities cited in note. 15 Am. & Eng. Ency. Law (2nd Ed.) 862 (b), note 6. Whoever invades the hallowed precincts of a home, and, without justifiable cause, by any means whatsoever severs the sacred tie that binds husband and wife, alienating her affections from him, depriving him of the aid, comfort and happiness of a loyal union between them, is liable in civil damages for his wrongful conduct. Rodgers, Dom. Rel., sec. 177; Schouler's Dom. Rel., sec. 41; Tiffany, Per. & Dom. Rel. 74; 15 Am. & Eng. Ency. Law 862. In such cases whether or not there were malevolent or improper motives is always a material consideration. In case of a stranger in blood the causes must be extreme that will warrant him in interfering with the relation of husband and wife. If he by advice or enticement induces a wife to leave her husband, or takes her away to remain from him, or harbors and protects her while away from him, he does these things at his peril, and

the burden is on him to show good cause and good faith for his conduct. As is said by Mr. Rodgers: 'It would seem upon principle to be rare indeed if the motive by a stranger breaking up a family could be a good one.' Rodgers, Dom. Rel., sec. 176; 1 Jaggard on Torts 467; Tiff. Per. & Dom. Rel. 776; Schouler, Dom. Rel. 41 and cases cited by these. But the rule is different in case of a parent.''

In Schouler, Husband and Wife, pp. 57, 58, and same author's work on Domestic Relations, sec. 64, it is said:

''Each spouse is entitled to the society and companionship of the other. Inasmuch as the husband is thus entitled, he may recover his wife from any person who would withhold or withdraw her from him. This is a well-understood principle the world over. And the common law gives him the right to sue for damages all persons who seek to entice her away. But in such cases malice and improper motive are always to be considered; and parents and near relatives stand on a different footing from strangers. So is the previous conduct of the husband towards his wife a material element to be considered; since this, and not the interference of others, may have occasioned the separation. It is one thing to actively promote domestic discord, but quite another to harbor from motives of kindness and humanity one who seeks shelter from the oppression of her own lawful protector.

''Yet such conduct, whatever the motives, is, on the part of strangers, exceedingly perilous, generally open to misconstruction, and never to be encouraged. They should leave the parties to their lawful remedies against one another. With parents it is different. There are several cases in the American reports where a father is not only held to be absolved from liability for sheltering his daughter, who has fled from a drunken and profligate husband, but even stimulated to do so. 'A father's house,' says Chancellor Kent, 'is always open to his children; and whether they be married or unmarried, it is still to them a refuge from evil and consolation in distress. Natural affection establishes and consecrates this asylum.' But this does not justify even a parent in hostile interference against the husband; for the latter's rights are still superior; and the father must give up his daughter and the marriage offspring, whenever she wishes to return, unless the proper tribunal has decreed

otherwise; though he might, we suppose, by fair arguments, urged to promote her true good, seek to dissuade her from returning."

The petition as amended being good on demurrer the lower court erred in sustaining the latter, hence the judgment is reversed and the cause remanded for further proceedings consistent herewith.