## Commercial Carriers, Inc., et al. v. Small.

Feb. 28, 1939.

GEORGE K. HOLBERT, Judge.

EDWARD J. HOGAN, A. M. THOMAS and J. R. LAYMAN for appellants.

WILBUR O. FIELDS and L. F. BISCHOF for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The appeal is from a $3,000 judgment for the loss of consortium and services of the plaintiff's wife who was injured in an automobile accident alleged to have been caused by the negligence of the appellant, Commercial Carriers, Incorporated, and Thomas Hendricks, its driver.

The accident occurred at a bridge or culvert about 6 miles south of Elizabethtown, about noon July 15, 1936. Mrs. Anna Kinbrough Small, wife of the appellee, Ralph B. Small, Sr., residents of Macon, Georgia, was riding in a Dodge automobile driven by their son, Ralph B. Small, Jr. An automobile transport truck and trailer, driven by Hendricks, was going north. The black-top macadam is 17 to 18 feet wide on either side of a 25-foot bridge over a creek. It is 16 feet wide between the curbs, or copings, which appear to be only a few inches high. The road is straight for some 200 feet on either side of the bridge and it is in plain view for about 500 feet from the south and 400 feet from the north, so that machines coming in opposite directions are visible for perhaps 900 feet, one from the other. The approach toward the south is practically level, but from the north, the way the truck was traveling, there is a grade of perhaps five per cent. The truck was seven

feet wide and the trailer eight feet. Together they were 30 feet long. The automobile was 5 feet, 4 inches wide.

Young Small testified that when he got about 100 feet from the bridge 'the truck was possibly 175 feet beyond it. He was traveling 30 or 40 miles an hour and the truck was going possibly 50 miles an hour. Said he:

"I noticed that the trailer of the truck was swaying from side to side, which, of course, in that case you couldn't tell what was going to happen, so I began to slow up and pull over as far as I could to the right, and I came almost to a standstill just a few feet north of the bridge."

The truck speeded up and "swung to the center of the road and crossed the bridge before I got there; and as it crossed it cut sharply to the right." His automobile was then 8 or 10 feet off the bridge. When the truck cut sharply to the right the trailer swung out to the left and "hit the left front of our car and took the wheel off completely and bent the fender back and bent in the doors, and the force of it knocked my feet off of the pedals, which were on the clutch and the brake, slowing it down, and when that happened the car was put back in gear and it rolled forward and hit the coping of the bridge and went over the bridge and turned completely upside down in this water—it is about six feet to the water and the water was five or six feet deep at that time."

There was a long mark left on the road by the axle as the machine went forward. Its location and that of a post on the edge of the road, which was hit by the machine when struck by the trailer, or possibly before, support Small's evidence that he was well beyond the right of the center of the road; indeed, as far as he could get. Mrs. Small was thrown into the back of the car and was submerged in the water with the baggage and seats upon her. She was severely injured. Young Small was not badly hurt.

Hendricks, the driver of the truck, testified that he was running 25 or 30 miles an hour, as he approached the bridge. After making the turn in the road he saw the other car coming and checked his speed. The other car was "as far again from the bridge" as he was. When he was "right near the bridge" he saw the other car was coming through; it was going 35 to 40 miles an

hour. He flashed his lights continually from the time he was within 200 feet of the bridge until he saw that the other car was not going to stop. There is no evidence that he sounded his horn. He had gotten 6 or 8 feet out of the bridge when Small's car struck the fender of the trailer. The defendant's evidence is to the effect that the trailer was so fastened to the truck that it would not sway to one side. Hendricks testified that his wheels were 2 or 3 inches from the right side of the bridge. He drove up the road about 150 yards before stopping. He didn't think much damage had been done and went that far ahead because he knew there was another truck following him and he wished to avoid blocking traffic. He related that when the automobile struck the trailer it went forward and hung on the guard rail a few minutes and then toppled off into the creek. The driver of a truck following stated it appeared the ''tail end of his trailer caught the front end of the car'' and both machines seemed to be as close to the edge of the culvert as they could get.

Of course, the question raised on the appeal, that the defendant should have been given a peremptory instruction, must be decided upon the consideration of the plaintiff's evidence. The jury chose to accept that instead of the testimony of the driver. They doubtless thought that he had not been in position to see what happened at the moment of the collision, for he was up in the cab of the truck, 15 or 20 feet ahead, trying to keep his gigantic outfit in the road. The jury may have believed his continuous flashing of his lights—at high noon in the middle of July and not seen by Small—was an effort to order the approaching driver to get out of his way, whether he was required to do so or not, for Hendricks doubtless felt his overwhelming power. There are other circumstances which may also have been considered as discrediting Hendrick's testimony.

While the general standard of diligence of a driver of an automobile is always said to be ordinary care, one driving a large machine 8 feet wide—nearly 3 feet wider than the usual passenger car—must take that fact into consideration as he endeavors to exercise ordinary care in its operation. This trailer was the maximum width permitted by the statute, that is, 96 inches. 2739g-84, Kentucky Statutes. The appellant relies upon Pope-Cawood Lumber & Supply Company v. Cleet, 236 Ky. 366, 33 S. W. (2d) 360, and insists that the truck had

the right of way over the bridge since it was closer to the bridge when the driver saw the other car approaching. The facts in the Cleet Case are materialy different. The collision occurred on a one-way bridge. This did not. The bridge at which this accident occurred was practically as wide as the road and two cars of ordinary size could easily pass. Beyond this, the accident was primarily caused by the switching of the trailer against the car when the truck was swerved to the right.

It does not seem to us the court erred in refusing to give either a peremptory instruction for the defendant, or the offered specific instruction in substance that, the truck having entered the bridge first, it was the duty of the driver of the passenger car for the plaintiff not to enter thereon nor the immediate approach thereto unless the same was of sufficient width to afford reasonable clearance for the passage of both cars in safety.

Mrs. Small had sued the appellant for damages for her personal injuries. While the jury was considering her case, the jury in this suit was impanelled and excused until the next morning. A verdict for $2,500 was returned in favor of Mrs. Small. Upon the calling of this case that morning, the defendant moved for a continuance based upon an affidavit that the verdict had been generally discussed in town, and a local newspaper in which it was published had been circulated in the courthouse and the county. The members of this panel had been admonished not to talk to any of the other jury and to keep out of the courtroom during the trial of that case. After the motion for a continuance was made, upon inquiry by counsel for the defendant, each juror had answered that he had not read the newspaper. We think the court properly overruled the motion for a continuance.

When the trial was resumed at one o'clock that afternoon, Hendricks tendered an answer to the petition against the appellant and himself jointly, and moved that the jury be sworn to hear the action against him. The appellant joined in the motion. The court overruled it and recorded the fact that service of summons had been had upon Hendricks but it was not discovered by either counsel for the defendant or the plaintiff until the motion was made. The appellant maintains that the refusal to try the cases together was prejudicial error.

The argument is that there is no code provision

for a separate trial and such procedure is contrary to the policy of the law with reference to multiplicity of trials. In a tort action the plaintiff cannot demand a trial as to some of the defendants except that he discontinue his action as to others on the first day of that term of court. Section 363, Civil Code of Practice. If Hendricks had not been summoned the appellant, as defendant, upon a seasonable motion, could have had a continuance of the case unless the plaintiff dismissed his action against Hendricks. The failure to make such motion before going into trial must be deemed a waiver of that right. Rosenberg v. Dahl, 162 Ky. 92, 172 S. W. 113, Ann. Cas. 1916E, 1110. Moreover, as a general rule the allowance of a severance is discretionary with the trial court where the liability of defendants is several or joint and several. 1 C. J. S. Actions, Sections 118, 119, pages 1380, 1381. Under the circumstances the court did not abuse his discretion in overruling the motion to go back and start the trial over in order that the case against Hendricks could be tried out.

We find no substantial error in the admission of the evidence.

The instructions followed those approved in Leming's Adm'r v. Leachman, 268 Ky. 781, 105 S. W. (2d) 1043. Here, as there, the instruction contained a statement that one of the duties of the defendant's driver was "to travel upon the right side of the highway whenever possible and unless the left side of said highway was clear of all other travel or obstructions and presented a clear vision for a distance of at least 150 feet ahead."

The inclusion of this duty is the only question raised as to the instruction. It is submitted that this was an attempt to instruct under the terms of Section 2739g-39, which has reference to vehicles meeting one another, and that the requirement is as to overtaking a vehicle; also that the evidence did not warrant such an instruction. The current statute pertaining to the specific duties of drivers of automobiles meeting, Section 2739g-39, as amended by Chapter 106, Acts of 1938, merely provides that: "Vehicles proceeding from opposite directions shall pass each other from the right, each giving to the other one-half of the road as nearly as possible."

Section 2739g-35, which lays down rules of opera-

tion generally, contains the provision incorporated in the given instruction to which exception is taken. Since both parties had a clear vision ahead for a greater distance than 150 feet, the inclusion of the stated duty was not essential. Cf. Trevillian v. Boswell, 241 Ky. 237, 43 S. W. (2d) 715. But it cannot be regarded harmful in any degree.

There remains for disposition the question of whether the judgment of $3,000 is excessive. There has come down to us from ancient days the recognition in law that a husband has such a right to his wife's services, society and companionship that he may maintain an action for damages for their impairment or loss resulting from the negligence or wrongful act of a third person. Some courts have held that as the husband is not the master of a wife he can maintain no action for loss of her services and that his only legal interest or right is expressed by the word "consortium," which is the aggregate of the elements of matrimonial fellowship, her company, co-operation and aid in every conjugal relation. Others take the position that these are sentimental, intangible injuries which the law can not measure. 13 R. C. L. p. 1411; Annotation, 21 A. L. R. 1517. It is to be said also that a wife has the same legal rights in respect to the society and assistance of her husband, for these are rights, duties and obligations which, by marriage, both the husband and wife receive and take upon themselves; limited, however in this state to cases where such a loss is due to an intentional wrong or a direct attack on the marriage relation. Deitzman v. Mullin, 108 Ky. 610, 57 S. W. 247, 22 Ky. Law Rep. 298, 50 L. R. A. 808, 94 Am. St. Rep. 390; Hoagland v. Louisville & Nashville Railroad Company, 195 Ky. 257, 242 S. W. 628.

In this state the right of a husband to maintain an action of this kind is not affected by modern statutes relating to married women, nor by the fact that compensation may have been made the wife for her personal injuries. Louisville & Nashville Railroad Company v. Kinman, 182 Ky. 597, 206 S. W. 880; Robenson v. Turner, 206 Ky. 742, 268 S. W. 341; City of Paducah v. McManus, 256 Ky. 405, 76 S. W. (2d) 254. We recognize that the so-called sentimental elements of consortium are substantial and vital factors in producing and sustaining the union with respect to the husband, including his right to receive the wife's services about

the household and her assistance in the care of the children. Louisville & Nashville Railroad Company v. Kinman, supra; Lane v. Dunning, 186 Ky. 797, 218 S. W. 269.

With the nature of such interest in mind, we turn to the evidence to see to what extent the plaintiff's right of consortium has been invaded by the probable or proximate consequences of the defendant's negligence.

Mrs. Small, at the time of the accident, was fifty-four years old and her husband was fifty-nine. They had married in 1900. Of their five children the youngest, about eighteen years old, was living at home. It appears that she was in the antique furniture business and when the accident occurred was returning from furniture markets in the North. She suffered severe and many bruises and sprains about her whole body. They were particularly severe in and around the lower part of her back and pelvis. She was under the continuous, close care of physicians for six weeks and has been visited and treated by them at intervals since that time. Before receiving the injuries she had been healthy, cheerful and vigorous, and had had no medical attention for seven years. Perhaps the greatest injury resulting from her experience has been to her nervous system. The vasomotor system—relating to the expansion and contraction of the walls of blood vessels—was rendered unstable. At the time of the trial, a year afterward, the doctors testified that she was still emotional, very nervous and neurotic. Because of this condition and pain she had been unable to sleep without sedatives. Frequently she arose during the sleeping hours to take a hot bath to secure relaxation. The doctors differ in their opinions as to the permanency of the injuries. Those who thought there was no permanent injury believed that her recovery would be very slow. Since her injury members of her family have had to render her assistance and do things for her not previously required. She has withdrawn from practically all social activities. She goes to bed as soon as she eats supper and does not arise until late each morning. Mr. Small is healthy and active. Before his wife was injured they engaged in an active social life, enjoying the companionship of their friends, visiting and being visited. They had attended church together regularly every Sunday, but since her injury she has not been able to go. Because of her condition her husband has lost this former com-

panionable social life. And other conjugal relations have been impaired. In short, a strong, healthy, cheerful wife became for many months a complete invalid, and is now and will be for sometime, if not always, a semi-invalid. This the jury found was the result of the defendant's negligence. They declared that for the diminution or partial loss of the wife's consortium the defendant should pay $3,000.

In affirming a judgment for $3,500 for loss of a wife's conjugal society, we said in Robenson v. Turner, supra:

"For months her husband lost the comfort and pleasure of her society, and throughout the balance of their married life she will not be able to accompany her husband and contribute to his comfort and pleasure by doing those things which she could have done had it not been for her injuries. In the very nature of things it is extremely difficult to fix the damages in a case of this character, and, not being able to say that the amount allowed by the jury is so excessive as to strike us at first blush as being the result of prejudice or passion, the verdict will not be disturbed."

The Colorado Court eloquently spoke on this subject in Denver Consolidated Tramway Company v. Riley, 14 Colo. App. 132, 59 P. 476, 479; Note 21 A. L. R. 1518:

"The companionship and society of a wife are not articles of commerce. They cannot be weighed or measured. They are not bought and sold, and no expert is competent to testify to their value. The consideration upon which they are bestowed is not pecuniary. Yet the husband is entitled to compensation in money for their loss, and the amount of that compensation is to be determined by the jury, not from evidence of value, but from their own observation, experience, and knowledge, conscientiously applied to the facts and circumstances of the case. So, also, in relation to the services of the wife. The wife does not occupy the position of a servant, and her services to her husband are not those of a servant. She makes his home cheerful and inviting, and ministers to his happiness in a multitude of ways outside of the drudgery of household labor. All the work of the house may be done

by hired employés, and her services still give character to the home. They are not rendered in accordance with set rules. They are not repeated in regular order from day to day; they have their source in the thoughtfulness of the wife, and her regard for her husband; and no witness is qualified to define them, or reduce them to a list, or say what they are worth. So that their value must also be estimated by the jury."

See, also, Rott v. Goehring, 33 N. D. 413, 157 N. W. 294, L. R. A. 1916E, 1086, Ann. Cas. 1918A, 643; Note, 12 C. J. 532.

We do not therefore regard the judgment so excessive as to require its reversal.

Perceiving no prejudicial error in the record, the judgment is affirmed.