## Silver Fleet Motor Express v. Casey (two cases).

Nov. 7, 1941.

H. C. Gillis and R. W. Keenon for appellants.

R. L. Pope, Oscar Black and H. H. Owens for appellees.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming in part and reversing in part.

About 11 o'clock on the night of April 8, 1939, Chester Casey, Oval Jones, and Edward Rogers, employees of a florist shop in Corbin, and Howard Parker who had been in the shop while they were waiting for more orders or more flowers to be delivered on the next day, Easter Sunday, agreed to take a ride in an automobile belonging to young Casey's mother, Mrs. Hallie B. Casey. They decided to go to Levi Jackson Park which is near London about twelve miles from Corbin and located approximately a mile off U. S. Highway 25, and the purpose of the ride seems to have been recreation after the arduous labor of preparing flowers to meet the Easter

demand. At the Park they met a young man named Embry McKeehan. After remaining at the Park a short time, they started back, McKeehan accompanying them. The car, both going and returning, was driven by Chester Casey. Parker was riding on the front seat with Casey, and Rogers, Jones, and McKeehan occupied the rear. Traveling South, the car collided with a truck belonging to the appellant, Silver Fleet Motor Express, driven by the appellant, Leaman DeShields. The collision occurred in Laurel County at the north entrance of a bridge, and, as a result, Casey and McKeehan were instantly killed, and Jones, Rogers, and Parker were injured. The automobile was practically demolished and the truck considerably damaged.

At the time of the collision, the Silver Fleet Motor Express was operating as a common carrier of freight under a certificate of convenience and necessity issued by the Director of Motor Transportation of Kentucky which authorized it to transport merchandise through the counties of Laurel, Whitley, Knox, and others. The appellant, DeShields lived in Jefferson County, Kentucky; Chester Casey, Mrs. Casey, Rogers, and Parker resided in Whitley County, and Jones and McKeehan resided in Knox County, where they have instituted suit. To recover the damages sustained, Chester Casey's administrator, Mrs. Casey, Rogers, and Parker filed separate suits against the appellants in the Whitley Circuit Court, and the three former were tried together before the same jury, but neither the Rogers nor Parker case is before this Court on appeal. The jury awarded the administrator $3,000 for the death of his decedent, and Mrs. Casey $400 for the destruction of her automobile. The appellants have appealed from the judgment in favor of the administrator, and have moved for an appeal from the judgment awarded Mrs. Casey. The appeal and motion for an appeal will be disposed of in one opinion, since the grounds urged in support of each are the same. They are:

(1) That the Whitley Circuit Court acquired no jurisdiction over DeShields, since the accident occurred in Laurel County and DeShields was a resident of and was served with summons in Jefferson County.

(2) That appellants were entitled to a directed verdict either at the conclusion of appellee's evidence or at the conclusion of all the evidence.

Section 73, Civil Code of Practice provides that an action against a common carrier for injuries to the person or property must be brought in the County "in which the defendant, or either of several defendants, resides; or in which the plaintiff or his property is injured; or in which he resides, if he resides in a county into which the carrier passes"; and since the appellant carrier operated in Whitley County, it is tacitly conceded that the appellees had the right to sue it in the Whitley Circuit Court. But the appellant, DeShields, was not a common carrier, and, accordingly, his motion to quash the return on the summons served on him in Jefferson County should have been sustained. To hold otherwise would be to discriminate between driver employees of carriers and drivers not within that category. If appellees desired to sue both the carrier and its operator servant, they should have done so in Laurel County where the injuries were inflicted, or in Jefferson County where they both resided. Thus the discrimination alluded to would have been avoided, since, by the provisions of Section 74 Civil Code of Practice, every person is suable for injury to the person or property of another in the county in which he resides "or in which the injury is done." But we cannot agree with appellants' counsel that a reversal of the judgment against DeShields necessitates a reversal of the judgment against the carrier, since the jurisdiction of the Whitley Circuit Court over the latter was not contingent upon its acquisition or retention of jurisdiction over the former, but was fixed unconditionally by Section 73. Inapplicable are our decisions holding that where jurisdiction of a defendant summoned outside the county is dependent upon the acquisition and retention of jurisdiction over others, the former fails with the latter. Moreover, the carrier filed an answer and counterclaim in each of the several actions without raising the question of jurisdiction; and, patently, the fact that the erroneous refusal of the Trial Court to quash the return on the summons against DeShields apparently defeated the carrier's attempt to remove the case to the United States District Court on the ground of diversity of citizenship, affords no ground for a reversal.

The bridge proper was forty feet in length and the approaches at each end twenty feet. From wheel guard to wheel guard its width was fifteen feet 5 inches, and

the hard surface of the highway at the north end was approximately two feet wider. The road for more than seven hundred feet from each approach was straight, with wide shoulders. The collision occurred as the truck, seven feet five inches in width, left the north end of the bridge, and the physical facts indicated that the truck, going north, was on the east side, and that the collision was caused by the car, going south, striking a marker post on the west side of the highway about seven feet north of the bridge proper, glancing off, and running into the left side of the truck. DeShields so testified, and we are inclined to believe that his version of the tragedy is correct. But Rogers, Jones, and Parker all swore in substance that the lights of the truck, when they first saw it near the middle of the bridge, were out; that it was in the center of the roadway instead of on the right or east side; that the lights flashed on just before the collision occurred; that the driver of the car was to his extreme right of the highway; and that the collision was caused by the truck's occupancy of the middle of the highway as it came off the bridge. It is true that appellants introduced witnesses who testified that the survivors had made statements indicating that they did not know how the accident had happened, and that the testimony of others driving on the highway indicated that the truck was fully lighted as claimed by DeShields, and that the car was being driven at an excessive rate of speed. Moreover, the night was very dark, and we are inclined to believe the witnesses introduced by appellants who testified that it would have been impossible for the truck to have been operated without lights on the road or across the bridge. But we cannot usurp the functions of the jury and substitute for its conclusions our opinion of the credibility of the witnesses. The physical facts are persuasive but not conclusive, and in view of the testimony of the surviving occupants of the car, we are compelled to rule that the appellants were not entitled to a directed verdict on the ground that the proof of the truck driver's negligence was insufficient, or upon the ground that the evidence conclusively established negligence on the part of the driver of the car. Cloversplint Coal Co. v. Blair, 287 Ky. 158, 151 S. W. (2d) 1052.

But a further question remains to be considered. In one of his instructions, the Trial Judge informed the jury:

"If the truck was closest to the bridge referred to in the evidence, or had already entered same, then it was his (the car driver) further duty to stop said car unitl the truck had cleared said bridge; to observe any signs upon the highway of the fact that he was approaching a one-way or narrow bridge and to slacken the speed of his car in making said approach;".

The proof showed that the bridge was designated as a "Narrow Bridge" by the Highway Commission, and that a sign on the right of the road near the north approach to the bridge bore those words coupled with the admonition "Slacken Speed"; and it is contended by appellants that the rule approving such an instruction in the case of a one-way bridge is applicable to the case before us, since the danger of collision between a wide truck and a car on a bridge such as the bridge under discussion is very great. If so, appellants contend that they were entitled to a peremptory instruction because admittedly the truck had traversed the bridge before the car reached it, and the car did not stop or slacken its speed. But they further state that if this Court is of the opinion that the instruction given by the Trial Court was improper, they do not desire a reversal under the rule that a correct verdict rendered in disregard of an erroneous instruction will be set aside. Farmers' Bank & Trust Co. v. Harding, 209 Ky. 3, 272 S. W. 3. Appellees concede that the instruction given would have been essentially correct if the bridge had been a one-way bridge instead of a "narrow" bridge. Pope-Cawood Lumber & Supply Co. v. Cleet, 236 Ky. 366, 33 S. W. (2d) 360; Short v. Robinson, 280 Ky. 707, 134 S. W. (2d) 594. But they insist that since it was possible, according to the measurements given, for the truck and car to have passed each other on the bridge in safety, and a witness testified that he had seen such vehicles so pass each other, the rule relative to one-way bridges was inapplicable, citing Commercial Carriers, Inc., v. Small, 277 Ky. 189, 126 S. W. (2d) 143, in which the distinction between the rules applicable to the two types of bridges was sharply drawn. Appellants seek to avoid the effect of the latter decision by pointing out that in that case the bridge was little more than a culvert, while, in the case at bar, the bridge was not only narrow but elevated several feet above the highway. It is emphasized that the safety of motorists would be greatly augmented by

requiring of them the same degree of care in approaching and crossing narrow bridges as is required with respect to one-way bridges. At present, there is no statute on the subject, and if the rule which we have adopted is to be extended, it should be done by the Legislature. It follows that the Trial Court erred in giving the instruction referred to under which the appellants would have been entitled to a verdict in their favor; but, since appellants' counsel have requested us not to reverse the judgments solely upon the ground that the jury ignored the erroneous instruction, it becomes our duty to affirm them.

In the second case shown in the caption, the motion of the Silver Fleet Motor Express for an appeal is denied, and in both cases the judgments as to it are affirmed. The motion of DeShields for an appeal is sustained, and both judgments as to him are reversed.