BECKMAN, Inc., a corporation, and Ira Lee Livingston, Plaintiffs in Error,

v.

Herbert Alton MAY, Defendant in Error.

No. 37109.

Supreme Court of Oklahoma.

Nov. 5, 1958.

Robert E. Shelton, Savage, Gibson, Benefield & Shelton, Oklahoma City, A. Camp Bond, Muskogee, for plaintiffs in error.

C. D. Van Dyck, Jr., Chickasha, Pierce, Mock & Duncan, Oklahoma City, for defendant in error.

JOHNSON, Justice.

We refer to the parties herein as they appeared in the trial court.

This action was brought by Herbert Alton May, plaintiff, to recover damages for personal injuries, pain and suffering, medical expense incurred and to be incurred, and for property damage to his pickup truck allegedly sustained by him in a collision between his pickup truck which he was driving and a truck owned by the defendant, Beckman, Inc., which truck at the time of the collision was negligently driven by the defendant, Ira Lee Livingston, employee of the defendant corporation.

Defendants answered, denying liability and alleged that the collision was caused by plaintiff's negligence alone, or, in the alternative, that plaintiff was guilty of contributory negligence, and (Beckman, Inc.) cross-petitioned for damage to its truck.

The cause was tried to a jury which returned a verdict for plaintiff for $61,378.80. From the trial court's judgment based upon the jury verdict, the defendants appeal.

Defendants contend that the trial court erred in overruling their demurrers and motions for directed verdict and motions for new trial; that the court erred in refusing to give certain requested instructions and in giving others, and in general that the verdict was not sustained by the evidence and was contrary to law.

This, in substance, constitutes the grounds relied upon for reversal.

The facts, insofar as they relate to the care or lack thereof by the two drivers relative to the cause of the accident, are conflicting. It is only on matters pertaining to the physical factors involved that we find any agreement. The latter may be stated to be as follows: Plaintiff's vehicle was proceeding from the north approaching the bridge which was a structure of 182 feet in length, 18 feet wide, with 18-inch curbs extending co-extensively with the railings for the entire length. Defendant's truck was proceeding north. It consisted of a tractor and a trailer, and

the forepart had crossed the bridge before reaching the point of impact. The relative position of the two vehicles otherwise was a point in controversy. The area pavement of the roadway was asphalt and of the same width as the bridge, that is, 18 feet. It had been a rainy day, and some rain was falling at the time of the collision. The pavement was slippery from the rain. Defendant's truck was 45 feet long and seven feet, ten inches wide. Plaintiff's 1952 Dodge pickup truck was 75¼ inches wide. Plaintiff in approaching the bridge had passed two signs placed by highway authorities, the first reading "Narrow Bridge" and the second "One-Way Traffic for Trucks."

We find that the evidence on the part of the plaintiff tended to establish the following facts as to the point of collision: Plaintiff approached the bridge at a speed of from 20 to 30 miles per hour; by reason of the overcast sky, rain and the hour, it was rather dark; defendant's truck was crossing the bridge, some one-third of the tractor was across the center line to the left; plaintiff suddenly realized that the tractor had a trailer attached and that the driver could not get both units off the bridge in time for his truck to pass on the bridge; plaintiff, thus suddenly confronted with this situation, applied his brakes, his vehicle swung to the left and the two vehicles collided; plaintiff's pickup was driven backwards by the collision and into a ditch at the side of the highway; defendant's truck stopped on the pavement, the tractor being past the north end of the bridge, and the wheels were over the center line to the left approximately two feet.

The evidence on the part of defendants as to this phase of the proof tended to show that Livingston was driving 35 miles per hour and was coming out of the north end of the bridge, proceeding on the right side of the roadway, when plaintiff suddenly applied his brakes and skidded sideways across the center line of the roadway.

Further details of the evidence with respect to the case as a whole can better be referred to hereinafter in connection with the consideration of defendant's points argued as error.

 Defendants first address their argument on the inadequacy of the instructions to their contention that the trial court should have given their requested instruction that if the jury found from a preponderance of the evidence that the sole cause of the collision was the negligence of plaintiff, the verdict should be for defendant. It is urged in support of this point that since defendants contended plaintiff failed to observe warning signs, operated his truck without proper brakes, failed to slow to a speed whereby he could stop in the assured clear distance ahead, and was driving too fast under existing conditions, that such contention under the evidence and pleadings justified the instruction on sole negligence requested. All of the alleged details of negligence of which plaintiff is thus accused are, although pertaining to the plaintiff alone, such as would constitute contributory negligence in connection with plaintiff's action predicated on the alleged negligence of defendants on which he bases his claim for damages. Aside from the question of plaintiff's contributory negligence, defendants' liability depended entirely upon whether Livingston, the driver of the truck, was guilty of negligence which proximately caused plaintiff's injury, and the court so instructed the jury. The requested instruction that defendants were not liable if the collision was caused solely by the negligence of plaintiff simply stated the substance of the court's instruction in a different way. It is not error to refuse to give a special instruction requested by a party, where the proposition is substantially covered by other instructions given by the court. See Eagle-Picher Mining & Smelting Co. v. Drinkwine, 192 Okl. 662, 141 P.2d 66, where a similar instruction was requested, and the applicable principle of law stated as above. In following the above cited case in reference to the general principle established in this

jurisdiction, we held in Otis Elevator Co. v. Melott, Okl., 281 P.2d 408, 410:

"It is not error to refuse requested instructions where the propositions therein stated are substantially and correctly covered by other instructions given."

While it is true as argued by defendants that the court must, where the evidence supports the theory of the party, give appropriate instructions covering such theory, the right of the litigant is nevertheless subject to the rule stated in the two cases last above cited. Since defendants complain of the inadequacy of the instructions as a whole and certain instructions as improperly given, we must determine whether the instructions as a whole correctly state the law applicable to the facts of this case not only as to the point already referred to, but as defendants state on "all decisive features of the case" and on all "fundamental issues formed by the pleadings."

As was outlined in the instructions given by the court, the plaintiff's contention as reflected by the pleadings was, in brief, that his injuries and damages were proximately caused by the negligent operation of the defendant's truck in driving to the left of the center of the highway and creating an emergency in so far as plaintiff was concerned. The defendants' contentions as were also outlined and briefly stated were that the collision resulted from plaintiff's negligence alone in that disregarding the highway warning signs and traveling at an excessive rate of speed on wet pavement and not having his car under proper control could not stop in the assured clear distance ahead, by reason of which the accident occurred.

From an examination of the instructions given, we find that in the entirety thereof the legal issues were clearly defined as to the right of plaintiff to recover if the defendants were negligent and he was not; that if defendants were not negligent, plaintiff could not recover, but the corporation could recover on its cross-petition if plaintiff was negligent; and if both parties, plaintiff and defendants, were negligent, neither could recover. Under such circumstances defendants were not entitled to the requested instruction on sole negligence, as we have stated. However, defendants urge that the court should have given their requested Instructions 8, 9, 10 and 11 to the effect that a motorist has the duty on reaching a bridge too narrow for two vehicles to pass, and the bridge is then occupied by another vehicle, to stop until the other has crossed; that the right-of-way is accorded the driver first approaching a narrow or one-way bridge, with the duty to the other driver to stop; and in judging the duty of the respective drivers under such situations, the jury should take into consideration all the surrounding circumstances. That plaintiff had the duty of observing and heeding the highway warning signs, and if defendant's truck was closer or had entered upon the bridge, plaintiff had the duty to stop until defendant's truck had cleared the bridge. Inclusion of instructions was also requested covering statutory provisions pertaining to the requirement that on roadways of sufficient width a vehicle should keep to the right except on roadway designated and sign posted for one-way traffic; the authority of the State Highway Commission to determine portions of highway where passing or driving to left would be especially hazardous, and that drivers of vehicles should obey the directions given by the signs; and the Commission may designate one-way traffic. In connection with these statutory provisions, it was requested that the jury be instructed that if the bridge was marked for one-way traffic for trucks and defendant's truck entered first and was almost across as plaintiff was approaching, defendant had right of way, and plaintiff had duty of stopping and waiting until defendant's truck cleared the bridge; that if plaintiff failed to heed the signs and such was the cause of the collision, the verdict should be for defendants. In connection with regulatory provisions of the statute pertaining to the use of the highways, the court gave the following instructions:

"No. 10. The law of this State provides: Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed, not greater than or less than is reasonable and proper, having due regard to the traffic, surface and width of the highway, and of any other conditions then existing, and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead.

"Right-of-way. The privilege of the immediate use of the highway.

"Upon all roadways of sufficient width a vehicle shall be driven to the right of the center of the roadway, except as follows:

"Upon a roadway designated and signposted for one-way traffic.

"Drivers of vehicles proceeding in opposite directions shall pass each other to the right, and upon roadways having width for not more than one line of traffic in each direction each driver shall keep to the right of the center of the roadways.

"The State Highway Commission or other authorities within their jurisdiction may designate any road, street or highway, or any separate roadway under their jurisdiction, for one-way traffic and shall erect appropriate signs giving notice thereof.

"No. 11. It is the duty of a person, or persons, operating motor vehicles on the highways, streets and roads of this state to observe the state laws with reference thereto, as set out herein, and a violation of a state law in the operation of a motor vehicle is negligence per se, that is negligence in and of itself. However, before a person guilty of negligence per se may be held liable in damages therefor, it must appear from a preponderance of the evidence, that such negligence per se was the proximate cause of the injuries and damage, if any, sustained.

"No. 12. Where signs are placed on the highways directing or warning the drivers of motor vehicles on said highways as to the condition of the highway, bridges and other conditions then and there existing, it is the duty of the drivers of said motor vehicles to pay reasonable and proper attention thereto and to be governed accordingly in the operation of their vehicles."

■ The instructions thus given were adequate and proper on this particular phase of the case, and when considered with the other instructions fully covered the issues arising from the case as a whole. The bridge was of the same width as the paved surface of the highway in the area. It is conclusive from the evidence that defendant's truck and another of equal width could safely pass on the bridge. Plaintiff's pickup truck was of comparable width with average passenger cars, and both plaintiff's and defendant's vehicle could pass on the bridge with equal safety as on any other portion of the paved way in that area. While it is true that the bridge was designated by the warning signs as narrow and one-way for trucks, we find nothing in such designation under the facts of this case to support defendants' contention that the instructions on yielding the right-of-way across the bridge or stopping should apply. Such would only be applicable to a one-way bridge. The distinction thus drawn was made by the Kentucky court in Silver Fleet Motor Express v. Casey, 288 Ky. 233, 155 S.W.2d 863, and cases cited therein.

In view of the conclusion thus reached, and it appearing that the court's instructions covered additional points incorporated in the requested instructions, there is no merit to the contention of defendants that the requested instructions should have been given, or that the court should have given a specific instruction designating plaintiff's vehicle to be a truck.

■ Defendants further contend that Instruction No. 9 on sudden emergency should not have been given. Whether or

not a sudden emergency existed was a vital question for the consideration of the jury in connection with plaintiff's right of recovery, and the negligence or lack thereof on the part of plaintiff in connection therewith was directly connected with and a part of the determination to be made by the jury as to care or lack thereof on the part of the drivers of each vehicle in relation to the rights of the parties to the action. The instruction given by the court fully met the requirements stated in Feuquay v. Ecker, 195 Okl. 285, 157 P.2d 745, and Rosamond v. Reed Roller Bit Company, Okl., 292 P.2d 373. Under the evidence the matter was properly submitted to the jury.

■ Defendants complain of alleged substantial error in the admission of two different photographs of plaintiff. One was taken while plaintiff was lying on his back (on a hospital cot while in the hospital) with a cast on his right leg. A large picture of the plaintiff in navy uniform was setting on a table at the right side of his bed, which was easily recognized by the jury as plaintiff's picture. The other had the same setting except that plaintiff was lying on his left side with his right leg (the one with a cast on it) slung from a horizontal bar almost on a level with plaintiff's picture in navy uniform. It is argued that his condition was fully described in the testimony and that the purpose in offering the exhibits was to "inflame the jury," and that they were prejudicial to defendants' rights and resulted in the jury awarding an excessive judgment. From an examination of these exhibits and the record in this case, we find reason to support defendants' claim that they were improper and may have been prejudicial to defendants. Obviously, plaintiff's picture was placed so conspicuously for the sole purpose of getting before the jury a matter not germane to the issues, and thereby arousing sympathy, passion and prejudice in the minds of the jury. In this plaintiff may well have succeeded.

■ At the hearing before the trial court on the motion for a new trial, counsel for defendants offered the testimony of three jurors that during the course of the trial a conversation was overheard by members of the jury between two witnesses relative to the testimony of one as stretching the truth "a little bit," to which the other replied that he was compelled to testify as he did. Counsel for plaintiff denied that the jurors would so testify and objected to the offer of the jurors as witnesses. The court refused to take their testimony, and we believe rightly. The situation there presented falls directly within the rule stated in Wilson v. Oklahoma Ry. Co., 207 Okl. 204, 248 P.2d 1014, 1020:

■ "Abiding on the principle of sound public policy, it has become the settled rule in this jurisdiction that a juror will not be permitted by affidavit or testimony to impeach the verdict for misconduct occurring either inside or outside the jury room."

See also Gutowsky v. Halliburton Oil Well Cementing Co., Okl., 287 P.2d 204.

■ There was no error in the instructions given by the court, and the evidence was sufficient to support a judgment for plaintiff.

■ The judgment should not be disturbed unless, as contended by defendants, it is excessive. The rule is well established that where it is contended the jury's verdict and judgment is not sustained by the evidence, such contention on appeal will be held without merit if there is any evidence, though conflicting, reasonably tending to support such verdict and judgment. See Jones v. Eppler, Okl., 266 P. 2d 451, 48 A.L.R.2d 333, and Hazelrigg Trucking Co. v. Duvall, Okl., 261 P.2d 204.

■ The defendants urge that the verdict was induced by prejudice and passion and was excessive and should not be allowed to stand; but if allowed to stand that a substantial order of remittitur should be entered. We agree. The evidence, generally speaking, would in our opinion sus-

tain the jury verdict and judgment based thereon; and, after a thorough examination of the record, excluding the exhibits hereinbefore discussed, we would be inclined to affirm the verdict and judgment as rendered, but we are of the opinion that those exhibits tended to arouse undue passion and prejudice in the minds of the jury and that by reason thereof the judgment is excessive. We therefore modify the judgment by reducing the judgment from $61,378.80 to $45,000 on condition that within ten days from the date the decision in this case is filed, plaintiff will file a remittitur, remitting the sum of $16,378.80; otherwise, the judgment is reversed and the cause remanded with directions to grant a new trial.