**F. O. LAKE, Plaintiff In Error,**

v.

**Lewis G. HART and Hazel M. Hart, and Security National Bank of Sapulpa, Oklahoma, a Corporation, Defendants In Error.**

No. 38208.

*Supreme Court of Oklahoma.*

April 14, 1959.

John W. Hampton, Tulsa, for plaintiff in error.

Green & Feldman, W. E. Green, Raymond G. Feldman, Wm. S. Hall, George A. Farrar, Tulsa, for defendant in error.

### PER CURIAM.

Plaintiff, F. O. Lake, brought this action to foreclose a chattel mortgage given to him by the defendant, Lewis G. Hart, to secure the unpaid portion of the purchase price of a small restaurant building and fixtures, and made the Security National Bank of Sapulpa, Oklahoma a party defendant. The defendant bank filed their cross-petition to foreclose their chattel mortgage given by the defendants, Lewis G. Hart and Hazel M. Hart, covering the same property covered by the plaintiff's mortgage; the case was tried to the court, without a jury, on the question of priority of mortgages as between the plaintiff, F. O. Lake, and the defendant bank.

Briefly stated the plaintiff agreed to sell his restaurant building and fixtures to Lewis G. Hart for the sum of $2,500. An $800 down payment was agreed upon and the balance was to be paid at the rate of $50 per month. The defendant, Hart, negotiated a loan with the defendant bank in order to obtain the purchase money for plaintiff's restaurant.

The further facts are that on May 31, 1956 Mr. Hart went to the bank and had a talk with one Mr. McMinnimy, vice-president of the bank, and in substance told him that he wanted to make a deal with Mr. Lake for the restaurant building and fixtures, and wanted to borrow $1,500 to make a down payment of $800 and the balance to be used in operating the business. He was informed that the bank would have to have a first mortgage on the property and it would be necessary for him to have a bill of sale from Mr. Lake, showing title in him before the bank would accept the mortgage on the property, and his wife, Mrs. Hart, would have to co-sign the note and mort-

gage with him before the bank would consummate the loan. Mr. Hart signed a note for $1,759.16 and a mortgage on the property he was buying from Mr. Lake.

On June 1, 1956 Mr. Hart bought the restaurant from Mr. Lake, wrote him a check for $800 on the bank, executed a note and mortgage on the property for $1,700 in favor of Mr. Lake, and was given a bill of sale on the property, executed by Mr. Lake. On June 2, Mr. Lake went to the bank and cashed the check.

On June 4th Mr. and Mrs. Hart went to the bank and delivered the bill of sale to the bank and Mrs. Hart signed the note and mortgage which was executed by her husband on May 31, 1956. The bank then issued a deposit slip in the name of Lewis G. Hart and Hazel M. Hart and opened an account in their name. On June 5th the bank had the mortgage filed of record in the county where the property was located. On September 24 Mr. Lake had his mortgage filed of record.

The case was tried to the court on March 13, 1957 and taken under advisement until the 12th day of December, 1957, when the court held in part:

"* * * and after giving careful consideration to the facts and the evidence disclosed at the time of trial, finds that the mortgage executed in favor of the Security National Bank is a valid first chattel mortgage, and that the chattel mortgage executed in favor of F. O. Lake is a valid second chattel mortgage, being junior and inferior to the mortgage lien of the Security National Bank, covering the same property."

The plaintiff in his brief contends, "* * that the defendant, Hart, without notice or knowledge to the plaintiff, borrowed money and mortgaged to the defendant bank personal property belonging to the plaintiff, and the defendant bank loaned money on property with full knowledge that the defendant mortgagor had no title to the chattels; nor did the defendant present a bill of sale to the bank until after he made a down

payment with money he received from the defendant bank. The title to the plaintiff's property did not pass to the defendant until a consideration was received by the plaintiff, and that title at the time it passed to the defendant, Hart, was obviously subject to the lien of the plaintiff. The defendant could certainly pass no better title than he had received." This contention would be correct in the absence of any knowledge by Mr. Lake, of the prior arrangements Hart had with the bank.

Gerald W. Harman, who accompanied Mr. Hart to the bank, and also claims he went with Mr. Hart the following day to see Mr. Lake (which was denied by Lake), testified:

"Q. What was the financial arrangement to be worked out? A. Mr. McMinnimy stated to Hart that the bank would have to have a first mortgage for them to be interested. The bank in the first place was not very interested in cafe property. Any difference in the asking price and the agreed price would have to be consummated between the Lakes and Hart.

"Q. Now, were you present at any subsequent conferences between the Harts and the Lakes or with the Harts and the bank? A. Yes, sir.

"Q. When was this and what was the meeting about? A. A day or two later—after the conversation I just stated, when Mr. Hart and I—he felt that he didn't know the Lakes well enough and he wanted me to go with him and talk to the Lakes and see what they could work out on the difference in price between the bank loan and the Lakes' asking price. I went with him and Mr. Hart stated what the bank had told him, and that they would have to have a first mortgage. Mr. Lake said, 'I am very well aware of that—the bank doesn't do business any other way and I will work with you in any way I can. If you need extra help, I will stay and help you until you get acquainted with the customers.'"

Also the testimony of Lewis G. Hart, which in part, states as follows:

"A. I went to Mr. and Mrs. Lake: I went in the restaurant and told them the only way I can get the money to buy the place is the bank wants a first mortgage on the place, and it was agreed upon, right then.

"Q. It was agreed upon. How was this shown? A. It was agreed between Mr. and Mrs. Lake it would be alright for me to borrow the money and to let the bank have a first mortgage on it.

"Q. Did they say that to you? A. Yes, sir."

And again under cross-examination:

"Q. You stated a while ago in your testimony that Mr. Lake was aware of the fact that you had mortgaged the restaurant and fixtures to the Security National Bank of Sapulpa? A. Yes, sir.

"Q. What did Mr. Lake say at the time? A. He just agreed—he said that will be all right.

"Q. In other words, it was your impression that Mr. Lake was aware of the fact that you had executed a prior note and mortgage. Is that correct? A. It wasn't my impression, I knew he knew it.

"Q. How did you know it? A. By him saying so.

"Q. In other words, he told you that he knew that to be the case. Is that correct? A. Yes, sir."

The testimony of Mr. and Mrs. Lake is in conflict with that of Mr. Hart, but the trial court held against them and that holding is binding on this court.

In Beckman, Inc. v. May, Okl., 331 P.2d 923, 925, we held:

"Where it is contended that the jury's verdict and trial court's judgment based thereon is not sustained by the evidence, such contention on appeal will be held without merit if there is any evidence, though conflicting, reasonably tending to support such verdict and judgment."

Judgment affirmed.

The Court acknowledges the aid of Supernumerary Judge N. S. Corn in the preparation of this opinion. After a tentative opinion was written, the cause was assigned to a Justice of this Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the Court.