## Rice v. Franklin Title & Trust Co. et al.

Jan. 12, 1945.

J. Leonard Walker, Finley F. Gibson, Jr., and Lindsay Ridgway for appellant.

T. C. Carroll and J. W. Clements for appellees.

OPINION OF THE COURT BY JUDGE SIMS—Affirming.

Appellant, David R. Rice, as plaintiff below instituted this action to recover for personal injuries and for damages done his truck resulting from a collision between it and an automobile driven by Alvin B. Wolff employed by the Franklin Title & Trust Company. The separate answers of Wolff and the Company denied negligence and contained pleas of contributory negligence on the part of plaintiff. By way of counterclaim, Wolff alleged his car was damaged by reason of plaintiff's negligence. Replies completed the issue and a trial resulted in a verdict that both Rice and Wolff were negligent and denied damages to either. From the judgment entered thereon Rice appeals but Wolff prosecutes no cross-appeal.

Some three or four miles north of Shepherdsville Highway 61 crosses a bridge over the tracks of the Louisville & Nashville Railroad Company at a point known as "Gap of the Knobs." The highway is paved with black top and going north in crossing the bridge from west to east, the highway makes almost a right angle turn to enter the bridge and leaves the bridge at a similar angle. The bridge is 14.5 feet wide, 100 feet long and spans the railroad tracks from west to east. As the highway approaches the bridge from the south it is upgrade for several hundred yards with the apex of the hill at the entrance of the bridge and a gravel road from the north enters the highway where the latter turns to cross the bridge. One traveling north who does not desire to cross the bridge when arriving at the top of the hill can continue north by leaving the pavement and using the gravel road. Where the pavement and gravel road meet there is a slight hump since the former is higher than the latter.

On the highway approaching the west side of the bridge and 300 feet from the entrance thereto is a yellow road sign, four feet square, reading "One way bridge." South of this sign and still further from the bridge (the record does not show the distance) is another sign showing a right curve, and south of that is still another sign (its distance is not given in the record) reading, "Slow." From the diagram filed in the record we would say that the sign showing a right curve is some 500 feet from the bridge, and that the "Slow" sign is about 800 feet from the bridge. From the west entrance of the bridge to the west edge of the pavement is 41 feet.

About 10 o'clock on the morning of July 20, 1942, Rice was proceeding north on this highway driving alone in his Chevrolet pick-up truck which had a governor limiting its speed to 38 miles per hour. He passed the three road signs just mentioned at what he says was some 18 or 20 miles per hour without checking his speed and as he got to the top of the hill Wolff's car had just emerged from the bridge and the two vehicles collided. The point of collision was 20 or 25 feet west of the bridge and near the west edge of the pavement. The right rear fender of the truck came in contact with the left front of the car which caused the truck to overturn and resulted in plaintiff being severely injured and his truck badly damaged. Wolff, the driver of the car, suffered no personal injuries and his car was but slightly damaged.

At the time of the collision the two front wheels of the truck were off the pavement and on the gravel road, while the rear wheels of the car were about 3 feet off of the bridge and its front wheels some 15 or 18 feet on the pavement. As above stated, the pavement fans out at the west end of the bridge and the road is 41 feet wide at that point.

On the trial plaintiff testified that he was familiar with the road and was traveling between 18 or 20 miles per hour and had no intention of entering the bridge but it was his purpose to proceed down the gravel road on a business mission; that he saw Wolff's car when it was about the middle of the bridge and it was making 10 or 15 miles per hour and as plaintiff was nearer to the intersection than was Wolff he did not stop; that Wolff failed to stop but emerged from the bridge without slackening his speed and plaintiff swerved his truck to his left to avoid the collision, but without avail.

A written and signed statement made by plaintiff a few days after the accident, together with the testimony of his two eyewitnesses, contradicts his testimony to such an extent as to practically destroy it. The statement recites that this was the first time that he had ever been over this road and he was not familar with it; that when he first saw the car its front was about 3 feet from the end of the bridge and plaintiff was then between the rise and the bridge and he tried to pick up speed but the governor prevented much of an increase; that he saw the car coming and he did not try

to make the turn (into the bridge) but noticed a gravel road continuing on straight and he headed for that and in doing so swung to his left. Two of plaintiff's witnesses, Paul Price and Paul Rice, who were sitting on the bridge and saw the accident, contradict themselves as well as the plaintiff on the same points and as badly as plaintiff's signed statement contradicts his testimony given on the trial.

Plaintiff's brother was in a Louisville hospital for an operation on that day and the route to Louisville leads over this bridge. Wolff testified that plaintiff said to him immediately after the accident that he was in a hurry on account of his brother and that he had never before been over this road and that likely he was to blame for the accident. It is worthy of note that plaintiff never rebutted this testimony.

Wolff further testified that he did not see the truck until the moment it came over the hill. At that instant he had just left the bridge and as the truck was only 75 feet away and approaching at a rapid speed Wolff brought his car to a sudden stop within about 2 feet. Plaintiff attempted to turn into the bridge but realizing he couldn't make it, swerved to the left and hung his fender on the bumper on the left side of the car and the truck overturned. Wolff is corroborated by William J. Watson, who was a passenger in his car.

Plaintiff's sole ground for reversal is that the court erred in refusing his proffered instruction that if the jury believed from the evidence that he was nearer to the intersection of the paths of the vehicles than the Wolff car, then it was the duty of Wolff to yield the right of way; and in giving an instruction that the vehicle had the right of way which would probably first reach or enter the bridge by proceeding at a reasonable rate of speed, and that it was the duty of the driver not having the right of way in approaching the bridge to bring his vehicle to a stop if necessary to avoid a collision and not to proceed until the other vehicle had an opportunity to clear the bridge.

We have held that a T connection of two highways is an intersection, Cook v. Gillespie, 259 Ky. 281, 82 S. W. 2d 347; Smith v. Goodwin, 292 Ky. 37, 165 S. W. 2d 976; and we have held that it was erroneous for the court not to instruct on which driver had the right of

way when there is a conflict in the evidence as to which first reached the intersection. KRS 189.330; Kentucky Livery Co. v. Meyers, 196 Ky. 822, 245 S. W. 822; Field v. Collins, 263 Ky. 474, 92 S. W. 2d 793. But when we consider the contradictions in plaintiff's testimony and the contradictions in the testimony of his two witnesses above referred to, we are constrained to agree with the trial judge that plaintiff's evidence conclusively shows that it was his purpose to turn into the bridge and that he only attempted to take the gravel road upon seeing Wolff's car emerge from the bridge; hence there was no evidence upon which the court could base plaintiff's proffered instruction and it was properly refused.

The given instruction of which plaintiff complains correctly states the duty of motorists approaching or crossing a one-way bridge, and evidently it was taken from the opinion in Short v. Robinson, 280 Ky. 707, 134 S. W. 2d 594, which was followed in Foley's Adm'r v. Witt, 294 Ky. 498, 172 S. W. 2d 81, where a one-way bridge was defined.

Admitting for the purpose of argument that there was evidence of probative value that it was plaintiff's purpose not to enter the bridge but to proceed down the gravel road, he still would be precluded from recovery in this case. To get to the gravel road plaintiff had to cross the through highway along which Wolff was driving. Subsection (4) of KRS 189.330 reads:

"The driver of a vehicle shall stop at the entrances to a through highway and shall yield the right of way to other vehicles which have entered the intersection from the through highway or which are approaching so closely on the highway as to constitute an immediate hazard * * * ."

Plaintiff admits he saw Wolff's car but a few feet away and thinking that he (plaintiff) had the right of way, attempted to speed up and cross directly in front of it. If, as plaintiff insists, he was crossing a through highway to reach a side road, it was as much his duty to come to a stop before crossing in front of traffic approaching so closely on such highway as to constitute an immediate hazard as it would have been had he been entering or crossing such highway from a side or inferior road. Under the statute just quoted it was plaintiff's duty to come to a stop before crossing

the highway in the circumstances appearing in this record. See Saxton v. Tucker, 280 Ky. 777, 134 S. W. 2d 590.

The judgment is affirmed.