## Foley's Adm'r v. Witt.

May 28, 1943.

Shumate & Shumate and Salem Moody for appellant.

John W. Walker and Ross, Ross & Bayer and Warfield Miller for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

About 8 o'clock in the evening of May 23, 1940, at a railroad underpass near Irvine, there was a collision between a passenger automobile, driven by Ross C. Foley, 21 years of age, and a farm truck owned by George Witt, being driven by Cecil McIntosh. Foley was killed

in the accident. The administrator of his estate brought this suit for damages against Witt and he counterclaimed for $550 damages to his truck. The verdict was as follows:

> "We the jury agree to find in favor of the plaintiff nothing and also find for the defendant nothing and further agree that each party shall pay their own cost."

Judgment was rendered in accordance with the verdict. Direct and cross appeals have been prosecuted.

Foley's administrator, as appellant, argues that the court erred (1) in overruling his motion for a peremptory instruction and to submit to the jury only the assessment of damages; (2) in instructing the jury; and (3) in making certain improper remarks in the hearing of the jury. The appellee insists there was no error in any of those particulars, and on his cross appeal argues that (1) he was entitled to a directed verdict for the amount of damages to his truck; and (2) that no cost should have been charged against him.

The underpass is 14 feet and 2 inches wide at the road level. The walls incline outward 2 inches in every foot in height so that 4 feet up the width is 14 feet and 10 inches. It is about 14 feet through the underpass. The black top or paved surface of the road within the underpass is 9 feet wide, the rest of the width being of gravel. There is at least 250 feet straight road on each side and the familiar white line down the center stops some distance before reaching the underpass. The passenger car was 70 inches wide at the fenders and the truck bed 88½ inches. Thus as a practical matter it was impossible for the two automobiles to pass within the underpass. The passenger car was being driven east toward Irvine and the truck west. Except as might be determined by weighing the evidence, there is an irreconcilable conflict in the testimony whether the collision occurred just inside the east or the west portal. The plaintiff's evidence was to the effect that Foley's car had practically gone through the underpass, while the defendant's evidence is that the truck had gone practically through it. We regard the better evidence as sustaining plaintiff's contention, but certainly in so far as the entire record relates to the question of which had the right of way or whether either party was solely negli-

gent, the contradiction made an issue for the jury. The same is true as to the matter of speed. Plaintiff's evidence was that the passenger car had stopped, or practically so, at the nearby toll bridge over the Kentucky River and was proceeding on its right-hand side of the road at 15 miles an hour as it approached the underpass, while the truck was coming in the middle of the road at 45 or 50 miles an hour. The car was scraping the wall of the underpass as it went through meeting the truck. Excepting to say he was driving in the center of the road, the testimony of the truck driver is just the converse, even as to the rates of speed the respective automobiles were traveling. He stated that as he met the car he dimmed his lights, as he always did when meeting one, when it was half way between the bridge and the underpass, perhaps 100 feet away. It seemed to him that he had plenty of time to get through before the other car reached it, but as he entered he realized that there would be a collision just as he would be going out so he put on his brakes. He testified that the passenger car did not slow down as it approached.

In support of his argument that the court should have held as a matter of law that the defendant's driver was guilty and the decedent was free of negligence, the appellant claims that the physical facts as well as the testimony show the collision occurred at the east side of the underpass, thereby proving that the car had gone practically through when the collision occurred. It is contended that the defendant's negligence was admitted by the testimony of his driver that he had seen the oncoming car when he was 100 feet from the underpass in the center of the road driving very slow and then stopped his car as he was entering it. He adds to this argument the absence of contradiction that Foley's car was scraping the side of the structure. If this testimony, separated from all other evidence of the defendant, should be given the conclusive probative force contended for by the appellant, there yet remains in the case considerable evidence of Foley's own negligence contributing to bring about the collision.

We do not think appellant's premise is sound, that this was unquestionably a two-way underpass because it was possible for two cars of ordinary width to pass each other safely in it. This conclusion removes the argument that the admission of the truck driver that he was

in the center of the road and not over on the right-hand side was an admission of negligence. The court instructed the jury in accordance with the instruction approved in Short v. Robinson, 280 Ky. 707, 134 S. W. (2d) 594 (Sec. 115, Stanley's Instructions to Juries), as to the reciprocal duties of the respective drivers of cars about to meet on a one-way bridge, except that the court inserted in clause "(e)" the phrase or condition "if the jury believe from the evidence it was a one-way underpass." It seems to us that the conflicting evidence authorized the submission of the case under this instruction, except that the court should have ruled as a matter of law that this was a one-way underpass under the circumstances. While there was no express sign along the road to indicate it, the narrowing of the surface and the stopping of the division line in the road certainly indicated it to be such a structure; but irrespective of the absence of such designation, it was a one-way tunnel as a practical matter. A one-way bridge or underpass we regard as a structure through which vehicles of lawful width cannot pass with a reasonable margin of safety while being operated at usual and lawful speed. While two ordinary passenger cars could squeeze through by careful driving, two trucks or one passenger car and a truck could not with any margin of safety. The parties were familiar with the underpass. Unless a driver can see and fully realize the ability to pass another car in safety on approaching such a condition as this, he must assume that the other car may be as wide as the law permits and that there can be no safe passage. The defendant's truck was within the statutory limitation. We think the duty devolved upon the plaintiff's intestate to recognize his inability to pass the on-coming car in safety and that there is evidence to the effect that he was himself negligent as well as was the defendant's driver; at least it presented a question of ordinary care. The jury found both drivers negligent, and the evidence sustains the verdict. The difference in the width of the structure distinguishes this case from Commercial Carriers, Inc., v. Small, 277 Ky. 189, 126 S. W. (2d) 143, and Silver Fleet Motor Express v. Casey, 288 Ky. 233, 155 S. W. (2d) 863. In the latter case the bridge was narrow but not a one-way structure, and we held the instruction as to the duties of cars about to meet on a one-way bridge was not applicable.

The defendant's truck was 88½ inches wide and

came within the provision of Section 2739g-90, Kentucky Statutes, now KRS 189.050, which makes it the duty of the operator of a motor truck "having a width of any part in excess of eighty-four inches" to have upon it "at least two clearance lights to indicate the outside left limit" of the car in the locations described. The testimony of two young men who were riding with Foley was that the truck did not carry any clearance lights. A number of witnesses introduced by the defendant testified that the statutory requirement had been fully met and that there were more clearance lights, clearly burning, than the law required. The plaintiff offered an instruction upon this point of negligence, but it was not given. The omission is assigned as prejudicial error.

The evidence of the plaintiff authorized the giving of the instruction. Had it been given it would have only afforded an additional ground of negligence upon the part of the defendant upon which the jury could have based a verdict. The jury did find the defendant to be negligent in one or more particulars described in the given instructions. To have submitted another could not have changed the verdict. It would only have enabled the jury to have found the defendant more negligent. Nor would it have made any difference in the finding that the deceased young man was himself negligent. The omission of the instruction was therefore a harmless error.

Other refused instructions offered by the plaintiff were to the effect that the court rule as a matter of law that the underpass was a two-way structure, and that in the absence of clearance lights the plaintiff's decedent had the right to assume that the on-coming car was narrow enough to enable him to pass it in safety. The expressed conclusions in respect to the character of the underpass above cover this point. Lights or no lights, we think it was the duty of the driver of the passenger car not to assume a clear way, especially if he was driving at the speed the defendant's evidence show him to have been driving, which is sustained by the result of the collision in smashing the cars.

There was a colloquy between the Judge and counsel for both sides with reference to the interrogation of a witness about the ability of cars to pass one another in the underpass, in which the Judge stated that if the truck driver could not pass through wholly on the right-

hand side of the center, then it was a one-way structure. Counsel for the plaintiff objected to the statement but did nothing more. The court was but stating an obvious fact and it was in no way improper or irregular.

On the cross appeal what has been said with reference to the plaintiff not being entitled to a peremptory instruction is sufficient response to the argument that the defendant was entitled to one in his favor.

The court entered a judgment that each party should pay his own costs. The statement of the jury in the verdict that they should do so was surplusage. It is the province of the court to adjudge the costs in the manner prescribed by the statute. We ruled in Lykins v. Hamrick, 144 Ky. 80, 137 S. W. 852, where there was a verdict against both parties on a petition and counterclaim for damages that the court should have entered judgment in favor of the defendant for the costs of the action under Section 889, Kentucky Statutes. Such a judgment was affirmed in Wolfinbarger v. Stanton, 220 Ky. 451, 295 S. W. 467. The amount of costs adjudged to be borne by the defendant in this action is relatively small. Under the circumstances, we think the ends of justice will be served by affirming the judgment, subject to the power of the court to modify it in this respect.

Judgment affirmed on the direct and cross appeal.