Everett L. RISEN, Administrator of the Estate of Bruce Lee Risen, Appellant,

v.

Andrea N. PIERCE, Appellee.

No. 90–SC–251–DG.

Supreme Court of Kentucky.

April 11, 1991.

Rehearing Denied June 6, 1991.

Nick L. Pearl, Pearl, Musselwhite, Wheatley, Smith & Gohman, Radcliff, Robert Spragens, Jr., Spragens, Smith & Higdon, P.S.C., Lebanon, for appellant.

Oscar H. Geralds, Jr., John G. Rice, Geralds, Moloney & Jones, Lexington, for appellee.

LAMBERT, Justice.

This Court granted discretionary review to consider whether the courts below erred in their determinations that the evidence did not require the jury to be instructed on the law relating to "one-lane bridges" and their determinations that remarks of appellee's counsel during summation, though improper, were not prejudicial.

This litigation arose out of a collision between an automobile driven by appellee

and a bicycle ridden by Bruce Lee Risen. As a result of the collision, Bruce Lee Risen died, and this action for damages was brought by his personal representative, appellant herein. The case was tried for two days before a six-person jury as agreed by the parties. The jury returned a verdict in which appellee was found negligent, but she was exonerated from liability by the jury's finding that her negligence was not a substantial factor in causing the collision. Judgment was entered in accordance with the jury verdict, and on appeal, a unanimous panel of the Court of Appeals found no prejudicial error and affirmed the trial court.

The first issue we will address concerns the failure of the trial court to give an instruction requested by appellant which would have informed the jury of the duty of a driver approaching a one-lane road or bridge. While the necessity for such an instruction is rare due to the condition of modern highways, in a proper case the law requires that such an instruction be given. *Short v. Robinson*, 280 Ky. 707, 134 S.W.2d 594 (1939), and *Foley's Adm'r v. Witt*, 294 Ky. 498, 172 S.W.2d 81 (1943). A general instruction as to the duties of drivers of motor vehicles is insufficient to apprise the jury of the special duties in and around one-lane roads and bridges. *Short v. Robinson, supra.*

To properly review the rulings of the trial court and the Court of Appeals on this issue, it is necessary to examine the facts in considerable detail. From the direction of appellee's travel, Parkers Mill Road is narrow and curves to the left. Forty-one feet from the edge of the bridge the center striping of the road is discontinued and guardrails are located on each side as the bridge is approached. It is essentially undisputed that from the point of discontinuance of center striping (41 feet from the edge of the bridge), and continuing to and across the bridge to the other side, the roadway is one-lane. If the point of collision had been within this one-lane section, appellee concedes a one-lane instruction would have been appropriate.

From her testimony it appears that as appellee rounded the curve on Parkers Mill Road and approached the one-lane roadway, she saw appellant's decedent riding a bicycle on the bridge and about to exit therefrom. Appellee believed the bicycle and its rider to be in her lane and according to her testimony, she began to take evasive action. First she swerved left, then right, and left again. Appellee's automobile then collided with the bicycle ridden by appellant's decedent at a point approximately 52 feet from the edge of the bridge, 10 to 12 feet outside of the "one-lane" roadway, and in the decedent's lane of travel. Prior to the point of collision, appellee's vehicle was in an all-out skid and finally came to rest partially inside the one-lane section.

The arguments of the parties for and against the giving of a one-lane bridge instruction may be summarized as follows: Appellee contends that since the point of collision was outside the one-lane section of roadway, albeit a very short distance, there was no reason to give such an instruction and this appears to be the view of the courts below. Appellant maintains that a broader view is required. He contends that in the vicinity of a one-lane bridge, legal duties arise prior to entering into the one-lane area, the principal of such duties being to yield the right of way and permit the other vehicle to safely clear before proceeding further. In other words, he contends that a driver approaching a one-lane bridge is not entitled to wait until the last moment before yielding to the other vehicle; that a driver approaching such an area must be in control of his vehicle so that he may safely reduce his speed and stop, if necessary, to permit the other vehicle to exit safely from the one-lane section. Without a one-lane bridge instruction, appellant argues, the jury is not fully apprised of the duties attendant upon the drivers.

There is a dearth of Kentucky authority on this issue and such authority as exists largely addresses the question of which vehicle has the right of way before either vehicle arrives at the one-lane bridge. It is generally the law that the vehicle first entering a narrow bridge or space has the

right of way and is entitled to proceed and "[i]n such a situation it becomes the duty of the latter to stop until the former has crossed over and cleared the way." *Short v. Robinson, supra* 134 S.W.2d at 597. The one-lane bridge instruction set forth in *Short* and followed in *Foley's Adm'r* substantially informs the jury of this rule of law. *See also* 1 O. Stanley, *Instructions to Juries in Kentucky*, § 115 (2d ed. 1957). In this case, however, there is no dispute that appellant's decedent had the right of way and that he was entitled to exit and clear the one-lane section of roadway before appellee proceeded on. The inquiry presented is whether appellee had a prior duty to conform the manner in which she drove her car to the conditions she would encounter upon reaching a one-lane road.

According to her testimony, appellee saw the decedent when he was still on the bridge. This was well before she reached the one-lane section. She perceived him to be on her side of the road, a manifestly incorrect conclusion as the decedent was in the one-lane portion of the bridge or roadway. She explained her presence on the wrong side of the road at the point of impact as resulting from her attempt to avoid the decedent because he had been on what she thought was her side of the road. Thus, appellee's own testimony as to her perception of right of way heavily implicated the one-lane section of roadway as a factor in the collision. Appellee knew or should have known that the decedent had the right of way and that he was entitled to a reasonable means of escape in the event she failed or was unable to yield. In such a circumstance, it was appellee's duty to yield the right of way to the approaching bicyclist and to permit him to exit safely from the one-lane area, if in the exercise of ordinary care, appellee saw or should have seen that the bicycle ridden by the decedent was approaching so closely to her intended line of travel as to constitute an immediate hazard.

■ Conceptually, the situation which prevailed here is not dissimilar to a circumstance of discovered peril or "last clear chance." This doctrine relieves a plaintiff of his antecedent negligence and imposes upon the defendant a duty to "employ the means at his command to avoid the injury, and this duty [begins] when [plaintiff's] peril might have been discovered." *Weintraub v. Cincinnati, N & C Ry. Co.*, 299 Ky. 114, 184 S.W.2d 345, 347 (1944). While appellant's evidence showed that the decedent was not guilty of any antecedent negligence, his position of peril was not unlike the peril of the decedent in *Weintraub*. In each case the decedent's position of peril, if his evidence was believed by the jury, was or should have been discovered by the defendant in time to have avoided the collision. A party to civil litigation is entitled to have his theory of the case submitted to the jury for its acceptance or rejection if there is any evidence to sustain it. *Farrington Motors v. Fidelity & Casualty Co.*, Ky., 303 S.W.2d 319 (1957).

■ Despite our view that the trial court erred in failing to give the requested instruction, there remains the fact that the jury found appellee negligent but also found that her negligence was not a substantial factor in causing the collision. We have carefully considered whether the finding of no causation renders the trial court's failure to give the one-lane instruction harmless error and concluded that it does not.

The jury was instructed that appellee had a duty to keep a look-out ahead, to keep her vehicle under reasonable control, to drive at a reasonable speed having due regard for the conditions and use of the road, to keep her vehicle on the right side of the center line, and to exercise ordinary care generally to avoid collision with other persons on the road. The jury's finding that appellee's breach of duty was not causally related to the collision does not end the inquiry. A finding of causation must be predicated on a breach of one or more of the enumerated duties and in a proper case, a jury may believe that such breach did not cause or contribute to the collision. If a legally required but undisclosed duty exists, the jury has no opportunity to find a breach thereof and no opportunity to find that such was the cause of

the harm. A jury must be comprehensively instructed as to the duties of the parties and given an opportunity to find that the breach of any one or more caused the collision.

The trial court's failure to instruct the jury in accordance with the principles set forth herein was reversible error and a new trial is required.

■ Appellant also contends that certain misconduct of appellee's counsel during summation requires reversal. While we are confident the trial court would prevent the recurrence of such misconduct upon retrial, in the interest of proper judicial administration, it is necessary that we speak to this issue.

By virtue of a pretrial order relating to exhibits, certain photographs of the accident scene taken by appellee on the weekend before trial were too late to be considered for admission as exhibits. Nevertheless, during her testimony, appellee made several references to these photographs. Appellant's objections were sustained and the court admonished the jury appropriately. During summation, however, the subject of these photographs was again raised and thereafter, in full hearing of the jury, an extraordinary exchange took place between counsel for the parties and the court. Rather than attempt to paraphrase or characterize this exchange, we quote verbatim from the transcript:

"[MR. GERALDS, addressing the jury:] Now, if you're really desperate, you take a picture that your investigator has taken about a year later, and you put it in her face and say, 'Mark it. Mark it,' knowing full well that that picture doesn't show enough road to really mark where she wanted to mark it. At that point, you may have noticed she looked over at me at the table and she told counsel, 'I've got a picture over there I took Sunday afternoon from my car showing where I was.' And he said, 'No. Mark this picture. Mark my picture.' And she did. Later, when I tried to introduce her picture, because it wasn't within the time, it was—

MR. SPRAGENS: If the Court please, it's not proper to comment upon evidence that the court has excluded.

MR. GERALDS: I'm just saying it was excluded because it wasn't marked in time.

THE COURT: Go ahead. I'll give him a little bit of leeway.

MR. GERALDS: Okay. Because it was taken on Sunday, we have a cut off for various periods. They objected to it, and it was excluded. Why did they not want her to show where she—

MR. SPRAGENS: If the Court please, that is entirely an improper argument.

THE COURT: Objection sustained.

MR. SPRAGENS: Ask that the jury be admonished.

THE COURT: Well, we didn't get enough into it. Go ahead.

MR. GERALDS: Adage we learn early in the practice of law, when it hurts, object.

MR. SPRAGENS: Your Honor, that is an improper statement.

THE COURT: Sustained.

MR. SPRAGENS: Ask that the jury be admonished.

MR. GERALDS: I told you.

THE COURT: Don't consider the remark, ladies and gentlemen.

MR. SPRAGENS: He said, 'I told you,' which is a further improper statement. Ask that the jury be admonished again about the continual offhand comments to the jury.

THE COURT: Just stick to the testimony.

MR. GERALDS: Yes, sir."

By post-judgment motions, a new trial was sought upon grounds of misconduct of counsel, *inter alia.* At the hearing, the trial court said:

"THE COURT: Well, I have given very serious thought to this case the entire week since I got the motion. All of your issues that you have raised, with the exception of the comment to the jury during closing argument, of course, I've duly considered before and, again, deny your motion for a new trial on that basis. For awhile during the week, I thought perhaps I might grant you a new trial

because Mr. Geralds, I must confess I was a little shocked at your comment to the jury because you've been practicing too long and you have too much ability. You can win your cases without doing that. . . .

On one occasion I do remember that my statement to you was a little sharp because I must confess I was a little surprised at your comment, and, yet, I'm not going to grant a new trial simply because I'm not sure that it would have any effect on the outcome of the trial had you not done it.

But I'm going to tell you right now, don't ever do that again in my courtroom. I won't tolerate it from attorneys. Because, as I say, you have too much ability as a trial lawyer, and we're not going to be like some other attorneys in other places. We want a fair playing field and I want this to be understood by all attorneys that you don't do it this way."

Affirming the trial court's order overruling the motion, the Court of Appeals relied on the trial court's "firsthand observations" and expressed the view that appellant was not "dealt an injustice or deprived of a fair and impartial trial."

It appears that the courts below imposed upon appellant a duty to show that the conduct of appellee's counsel was prejudicial to him. Appellant argues that this burden was misallocated and that it was appellee's duty to demonstrate an absence of prejudice. In other words, appellant contends that prejudice should be presumed.

Appellee relies upon the general rule that improper argument requires reversal only when it is prejudicial and results in injustice or deprives a party of a fair and impartial trial. We are reminded by appellee that

"if the attention of the court is called to an improper argument and if the jury is admonished in regard to it, a reversal will not be had unless it appears that the argument was so prejudicial under the circumstances that the admonition of the court would not cure it." *Mason v. Stengell*, Ky., 441 S.W.2d 412, 416 (1969).

Appellant relies upon *Louisville and N.R. Co. v. Gregory*, 284 Ky. 297, 144 S.W.2d 519 (1940), for the proposition that counsel cannot argue excluded testimony or imply that it was unfair for opposing counsel to have objected.

"We have written that when counsel deliberately go outside the record in the jury argument and make statements, directly or inferentially, which are calculated to improperly influence the jury, this court will reverse the judgment." *Id.,* 144 S.W.2d at 522.

We need not decide whether a timely and forceful admonition would have cured the improper argument of appellee's counsel for the record fails to reveal that such an admonition was given. While it does appear that the trial court attempted to give some admonition, no sooner was an admonition given than counsel made another improper remark. We recognize the difficult circumstance counsel imposed upon the trial court. Be that as it may, however, we cannot overlook such behavior as it is antithetical to a fair trial.

 It is clear from the verdict of the jury and the general tenor of trial that this was a close and hard-fought case on liability. As such, we believe it better to follow our decision in *Louisville and N.R. Co. v. Gregory, supra.* While we cannot say with certainty that the improper argument affected the result, we cannot say it did not. A party aggrieved by egregious argument should not be required to demonstrate prejudice, ordinarily an impossible task, for to do so would in most cases render reviewing courts powerless to correct the error. Moreover, we take this opportunity to state that such conduct will not be tolerated. Our decision in *Horton v. Herndon*, 254 Ky. 86, 70 S.W.2d 975, 977 (1934), fairly states the law of Kentucky and we reaffirm our reliance thereon:

"With the view of securing fairness in jury trials, we have adopted a rigid rule to prevent counsel from going outside the record in their arguments to the jury. The rule is that where an attorney makes a prejudicial statement of fact unsupported by the evidence, and the improper argument is brought to the Court's attention, the Court should promptly repri-

mand him and instruct the jury to disregard the statement and, if it be so prejudicial *that it may improperly influence the jury*, should set aside the verdict obtained by such attorney, and the failure of opposing counsel to ask that the jury be discharged is not a waiver of proper action by the Court." (Emphasis added.)

Upon this issue, we likewise reverse the courts below.

Appellant has raised additional issues in which we are requested to distinguish or overrule various decisions of this Court and clarify rules relating to jury instructions. While the questions presented are provocative and may be appropriate for another day, we find nothing in the questions raised which is likely to influence the retrial of this case. As such, it is unnecessary to extend this opinion further. Upon all issues raised, except for those directly addressed and decided herein, we affirm the Court of Appeals.

The decisions of the courts below are reversed and this cause remanded for a new trial consistent herewith.

STEPHENS, C.J., and COMBS, LEIBSON and REYNOLDS, JJ., concur.

SPAIN, J., dissents by separate opinion in which WINTERSHEIMER, J., joins.

SPAIN, Justice, dissenting.

With respect, I dissent. In my opinion, the trial court properly instructed the jury with regard to appellee's duties under the evidence of record. It is conceded by all that the collision between the car and the bicycle occurred in the two-lane roadway, not on the one-lane bridge or its approach. Consequently, there was no reason to instruct the jury that appellee had a duty to yield the right-of-way to the bicyclist in the area of the one-lane approach. Moreover, such an instruction completely ignored the provisions of the county ordinance requiring a bicycle to be ridden within five feet of the edge of the roadway, a major incursion into the "right-of-way."

The majority's synopsis of the evidence also fails to mention the undisputed critical testimony of the appellee that the bicyclist apparently did not see her automobile as it approached and veered to its right. She stated that, because of this, she steered sharply left and locked her brakes. Appellant's decedent finally noticed her, at which time he steered sharply to his right in an effort to get back into his lane. These statements explain why the impact occurred just over the center line slightly in the cyclist's lane. They also explain to this writer why the jury found that Ms. Pierce failed to perform one of her duties (to operate her vehicle on the right side of the center line) but that such failure was not a substantial factor in causing the collision. (She could not have avoided the bicycle even if she had been completely on her side of the roadway.)

I also do not believe that the misconduct of appellee's counsel, though clearly reprehensible, was sufficiently prejudicial to warrant a reversal. Like the Court of Appeals, I attach great weight to the refusal of the trial judge to declare a mistrial and, even more importantly, to grant a new trial even after the jury's verdict in favor of the defendant became known.

WINTERSHEIMER, J., joins in this dissenting opinion.