RENDERED: APRIL 16, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-1636-MR

BOBBY JONES                                                          APPELLANT

v.                   APPEAL FROM FAYETTE CIRCUIT COURT
                     HONORABLE THOMAS L. TRAVIS, JUDGE
                     ACTION NO. 17-CI-02188

TREY STURDIVANT                                                      APPELLEE

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: CALDWELL, MCNEILL, AND TAYLOR, JUDGES.

CALDWELL, JUDGE: Bobby Jones ("Jones") appeals orders of the Fayette

Circuit Court following entry of a judgment upon a jury verdict in favor of Trey

Sturdivant ("Sturdivant"). As we agree with Jones that the trial court erred in not

declaring a mistrial and in not granting a new trial, we reverse and remand for

further proceedings in conformity with this Opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a collision between vehicles driven by Steve Gumm ("Gumm") and Sturdivant. Jones was a passenger in Gumm's vehicle and allegedly suffered injuries from the collision. Jones filed a lawsuit against both Gumm and Sturdivant, alleging that both negligently operated their vehicles causing the collision and injuries to him.

Jones settled with Gumm on the eve of trial. The case proceeded to a jury trial only on Jones' claim against Sturdivant. Disputed issues at trial included whether Gumm or Sturdivant had a green light when going through the intersection and whether and to what degree Jones' physical problems were caused by the accident rather than pre-existing conditions.

The collision occurred on October 26, 2016 at the intersection of Man O'War Boulevard and Blazer Parkway in Lexington. Sturdivant was driving straight toward the intersection in one direction while Gumm approached from the opposite direction. Their vehicles collided when Gumm turned left at the intersection. Both Sturdivant and Gumm claimed to have had a green light when going through the intersection.[1]

---

[1] Sturdivant asserted on page 1 of his Appellee brief that Jones' claim against Sturdivant hinged solely on whether Sturdivant had run a red light, citing to statements in Sturdivant's trial memorandum to the same effect. But from our review of Jones' complaint, Jones did not directly and specifically allege in his complaint that Sturdivant had run a red light and could only be held liable for failure to stop at a red light. Instead, the complaint more generally alleged that Gumm and Sturdivant had both operated their vehicles in a negligent manner causing the

Jones, Sturdivant, and Gumm testified at the trial. According to Jones' trial testimony, he did not remember the actual collision. He could not remember what color the traffic light was immediately before the collision. Nor could he remember anything he said immediately after the collision.

Gumm said he remembered stopping at the intersection for several seconds due to a red traffic light. He testified that the light had just turned from red to a green arrow when he turned left. He had not seen Sturdivant's vehicle before turning, and he admitted that he did not know if Sturdivant swerved since Sturdivant's vehicle seemingly came out of nowhere. Gumm also testified that immediately after the accident, Jones exclaimed the other driver was at fault.

Sturdivant testified to having a green light while he drove through the intersection and to seeing Gumm's vehicle "inch up" to the intersection. But he believed that Gumm's vehicle would stop at the intersection. When Sturdivant saw Gumm's vehicle turning left, Sturdivant applied his brakes and tried to swerve to avoid a collision according to his trial testimony.

Sturdivant sought to present the testimony of a city traffic engineer at trial about the sequencing of traffic lights at the intersection on the date of the collision—for example, about whether a red light would immediately be followed

---

collision and injuries to Jones. And the trial court instructed the jury about driver's various other duties (such as keeping a lookout, maintaining a reasonable speed and control of the vehicle, and exercising ordinary care to avoid a collision) in addition to the duty to stop at a red light.

by a green light or whether there would be a flashing yellow light in between. But due to failure to timely disclose the nature of this testimony, the trial court granted Jones' motion to exclude this witness's testimony although it stated that other evidence about sequencing (such as videos) could possibly be admitted. Although Sturdivant presented the engineer's testimony by avowal when the jury was not present, no sequencing evidence was presented for the jury's consideration.

On multiple occasions during the two-day trial, Jones lodged objections and moved for a mistrial based on defense counsel's alleged failure to abide by the trial court's pretrial orders *in limine*. The trial court denied all mistrial motions, sustained most objections and admonished the jury to disregard the references to the prohibited matters in most instances. This pattern occurred from *voir dire* through closing argument and involved issues including seat belt use, tax-free status of damage awards, and Jones' prior receipt of Social Security disability (SSD) benefits.

After the presentation of evidence, the trial court provided its instructions to the jury. The first question for the jury to answer was whether it believed that Sturdivant failed to comply with applicable duties of care when driving and that such failure was a substantial factor in causing the accident. If the jury were to answer yes, it would then answer other questions in further instructions such as determining whether the other driver (Gumm) might be

partially at fault[2] and determining what, if any, damages were due to Jones.  But if the jury answered no to the first question and thus determined that Sturdivant was not liable, the jury would return its verdict in favor of Sturdivant to the trial court and would not need to go on to other instructions.

The jury answered "no," determining that Sturdivant was not liable and returning a verdict in his favor.  Jones then filed post-trial motions claiming various errors and arguing that the trial court should have granted a mistrial. Additionally, he argued the court should now grant a new trial, and it should sanction opposing counsel for alleged repeated failures to comply with pretrial orders.

At a hearing on the post-trial motions, the trial judge stated his belief that errors had occurred due to defense counsel seemingly not being cognizant of the trial court's pretrial rulings on various topics.  Defense counsel even explicitly agreed with the trial judge's statement that defense counsel had not fully complied with orders *in limine.*  But noting that objections had been sustained and admonitions given, the trial court questioned whether the errors rose to the level of necessitating a mistrial.

---

[2] Jones, as a passenger, was not alleged to have been at fault, and the trial court's instructions did not provide the jury with the opportunity to decide if Jones bore any degree of fault.

-5-

Jones' argued that defense counsel's actions had undermined his case and prejudiced the jury against finding in his favor. Defense counsel pointed out that the problematically addressed issues related to damages rather than determining Sturdivant's liability. He argued that the errors did not ultimately affect the outcome since the jury simply found Sturdivant not liable.

The trial judge orally indicated that sequencing evidence might be admitted on retrial and would make a finding of Sturdivant's liability even less likely. He expressed doubt that a new trial would change the outcome of the case. Although the trial court did not orally rule on this issue at the conclusion of the hearing, the trial court later denied Jones' motion for a new trial in a written order without further elaboration.

As for Jones' motion for sanctions against defense counsel,[3] the trial court reserved ruling on this issue pending any appeal in its initial written order.

---

[3] The trial court asked Jones' counsel at the hearing whether the motion for sanctions was in conjunction with another post-trial motion or was independent of the resolution of any other motion. Jones' counsel affirmed that the motion for sanctions was independent of other motions. Contained within the same document as other post-trial motions including the motion for a new trial, Jones' Motion for Sanctions states:

> The Court is well aware that it has inherent authority to award sanctions, to hold parties in contempt, to award attorneys' fees, to strike their pleadings and to award all necessary relief based on the circumstances before this Court. Due to the number and gravity of Defendant's violations of the Court's Orders, Plaintiff additionally moves for sanctions against the Defendant and asks the Court to award attorneys' fees for Plaintiff's preparation for the first trial, participation in the first trial, and preparation and argument of post-trial motions from the first trial, including all related costs and

And after Jones filed a motion demanding a ruling on this issue, the trial court again entered an order reserving its ruling on the issue pending appeal. Jones then filed a timely appeal of the trial court's judgment on the jury verdict.

On appeal, Jones asserts that defense counsel frequently accused him of hiding evidence and asked him about issues precluded by court orders. He argues that even though the trial court sustained his objections, it just added fuel to the fire of Sturdivant's accusations of Jones' hiding evidence.

From our review of the record, several prospective jurors expressed a desire to know about insurance and other collateral source payments in *voir dire*, although it does not appear that all of their questions were entirely due to defense counsel's actions. And there appeared to be some controversy about defense counsel arguing or inquiring about medical records without expert testimony discussing them. Generally, we are aware that the trial court permitted defense counsel to ask Jones about his medical records for purposes of cross-examination about whether he experienced neck pain before the accident but did not allow such records to be taken back as exhibits. We are also aware that defense counsel

---

expenses, to be paid within 10 days of the Court's Order on this issue. *Lake Village Water Ass'n v. Sorrell*, 815 S.W.2d 418 (Ky. App. 1991) (in addition to their authority under statutes and remedial rules, courts may invoke inherent power to impose attorney fees and related expenses on party as sanction for bad-faith contempt).

initially discussed a supposedly similar sequencing schedule at a different intersection during *voir dire* but that ultimately no sequencing evidence was presented.  Although we are aware of such other controversies, we decline to try to resolve every controversy arising in this trial but instead focus on only the most problematic issues which lead to our conclusion that the trial court erred in neither declaring a mistrial nor granting Jones' motion for a new trial.

## ANALYSIS

We reverse and remand as we conclude that the trial court erred in not declaring a mistrial or granting a new trial for the reasons stated herein.  As the trial court has not previously ruled upon Jones' motion for sanctions, we decline to address this issue further other than to direct the trial court to determine what, if any, sanctions are appropriate.  *See Klein v. Flanery*, 439 S.W.3d 107, 122 (Ky. 2014) ("As an appellate court, we review judgments; we do not make them.").  We also decline to address Jones' contention that the trial court erred in not removing a particular juror for cause as unnecessary to the resolution of this case since we reverse on the failure to declare a mistrial and the failure to grant a new trial.

The Kentucky Supreme Court recently discussed standards governing a trial court's ruling on mistrial motions and appellate review of such rulings in *Roberts v. Commonwealth*, 599 S.W.3d 841 (Ky. 2020).  It recognized that demonstrating "manifest necessity" for the extreme remedy of a mistrial is difficult

-8-

and that a trial court's ruling on a mistrial motion should not be disturbed absent an abuse of discretion. *Id*. at 851-52.

Despite the somewhat deferential abuse of discretion standard of review and the difficulty of demonstrating a manifest necessity for a mistrial, the Kentucky Supreme Court ultimately determined in *Roberts* that the trial court erred in denying motions for a mistrial. In large part due to the prosecution's repeated references to an inadmissible matter (a prior assault),[4] the Supreme Court determined that the criminal defendant did not receive a fair trial and that the trial court abused its discretion in denying her mistrial motion. *Id*. at 853. We recognize that *Roberts* is a criminal case in which an appellate court concluded that the trial court erred in its instructional and evidentiary rulings in addition to erroneously denying a mistrial motion. *See id.* at 847-51. Nonetheless, it suggests that individual errors which might not necessitate mistrial by themselves can together create a manifest necessity for a mistrial.

---

[4] In *Roberts*, the trial court ruled that the prosecution could admit evidence of a 2003 assault if it provided a proper foundation. *Id*. at 846. The Supreme Court determined that the trial court erred in this ruling and should not have permitted any evidence of this assault whatsoever. At trial, the prosecution violated the trial court's order by introducing evidence of the assault without a proper foundation. *Id*. at 848. Despite the trial court's offering an admonition which would presumably cure the error from the initial reference to the assault, the Supreme Court determined that the trial court's mishandling of other references to the assault (including its response to juror questions) compounded the effect from individual errors. *Id*. at 849-53.

In reversing and remanding based on the erroneous denial of mistrial, the Kentucky Supreme Court stated: "These multiple errors, one added to the next, created just the sort of manifest necessity our precedent envisions for the extreme remedy of a mistrial." *Id*. at 853. Similarly, in the instant case, the cumulative effect of defense counsel's repeated references to inadmissible, prejudicial matters precluded by orders *in limine*[5] created a manifest necessity for the extreme remedy of a mistrial. For the following reasons, we conclude the trial court abused its discretion in denying Jones' mistrial motions.

*Reference to Issues About Failure to Wear a Seat Belt*

In jury selection, defense counsel asked prospective jurors if they were familiar with Kentucky law requiring passengers to wear seat belts[6] and whether they agreed with holding people responsible for not wearing a seat belt. But provisions in the pretrial order *in limine* provided:

---

[5] As the trial judge asked defense counsel in the hearing on post-trial motions: "Just the sheer cumulative effect of those misstatements and errors or things that seem to be a violation of the court's pretrial orders on motions *in limine*, in particular, why does that not justify his client [Jones] receiving a new trial, sir?" (Video Record 9/18/2019, 3:27:45-3:28:01.)

[6] Jones argues that defense counsel mis-stated the law, citing *Tetrick v. Frashure*, 119 S.W.3d 89, 92-93 (Ky. App. 2003) (determining that no duty to wear a seat belt is imposed on passengers by Kentucky Revised Statutes (KRS) 189.125(6), which then provided in pertinent part: "No person shall operate a motor vehicle manufactured after 1965 on the public roadways of this state unless the driver and all passengers are wearing a properly adjusted and fastened seat belt, unless the passenger is a child who is secured as required in subsection (3) of this section."). We note that the current version of KRS 189.125(6) is substantially the same except that it now refers to motor vehicles manufactured after 1981 instead of 1965.

18. The Plaintiff's [Jones'] motion to preclude evidence of the Plaintiff's failure to wear a seatbelt and that such a failure may have been a statutory violation or evidence of negligence *per se* is **SUSTAINED by agreement**.

19. The Plaintiff's motion to preclude comment or evidence from the Defendants that fault should be assessed to the Plaintiff for failure to wear a seatbelt or that such failure caused or enhanced his injuries is **SUSTAINED by agreement**.

(Order dated June 13, 2019, attached as Tab G, Appendix to Appellant's brief, p. 4.) *See also* KRS 189.125(5), providing: "Failure to use a child passenger restraint system or a child booster seat shall not be considered as contributory negligence, nor shall such failure to use a passenger restraint system or booster seat be admissible as evidence in the trial of any civil action. Failure of any person to wear a seat belt shall not constitute negligence per se."

The trial court sustained Jones' objection to Sturdivant's discussion of seat belt use in *voir dire*, denied Jones' mistrial motion, and admonished the jury that whether anyone had been wearing a seat belt was not an issue in the case. (Jones' counsel declined a similar admonition that whether Jones wore a seat belt was not an issue for their consideration perhaps to avoid the jury focusing on whether Jones wore a seat belt.) Sturdivant does not dispute Jones' contention that the defense failed to come forward with expert proof showing that Jones' failure to wear a seat belt caused or contributed to his injuries. Even assuming *arguendo* that

-11-

the seat belt use issue by itself would not have necessitated a mistrial, the improper injection of this issue in *voir dire* together with other factors had a cumulative effect casting significant doubt on whether Jones received a fair trial.

*Tax-Free Status of Awards*

Three times during *voir dire*, defense counsel asked prospective jurors how they would feel about receiving different sums of money "tax-free." But the trial court's pretrial order precluded the defense "from stating that any damage award is free of federal or state income tax . . ." upon the parties' agreement. Jones moved for a mistrial due to the "tax-free" references which he argues suggested any damage awards would be tax-free. The trial court denied the mistrial motion and declined to give an admonition, and Jones did not request an admonition.

Sturdivant points out that his counsel did not directly state that any damage awards were tax-free and asserts that technically the order was not violated because defense counsel did not ask the jury about a tax-free award of the amount of damages sought by Sturdivant. Nonetheless, defense counsel's repeatedly asking prospective jurors how they would like to receive different sums of money tax-free can be reasonably construed as implicitly suggesting that money awarded as damages to Jones would be tax-free. And despite denying the mistrial motion and agreeing with defense counsel that technically its order had not been violated,

-12-

the trial judge expressed being uncomfortable with how defense counsel asked prospective jurors about their feelings about receiving money tax-free. Even assuming *arguendo* that the "tax-free" issue by itself did not necessitate a mistrial, it was at best an unnecessary and potentially prejudicial distraction from the real issues to be decided by the jury and together with other problematic factors contributed to a cumulative effect of casting significant doubt on whether Jones received a fair trial.

*Social Security Disability (SSD) Benefits*

At the hearing on motions *in limine*, the trial court stated that given issues about whether Jones' physical problems stemmed from pre-existing conditions or resulted from the collision, inquiry would be permitted about whether Jones had applied for disability benefits. But the trial court indicated that the Social Security Administration's (SSA's) determination of disability and the amount of the SSD award were inadmissible. Its written order, however, denied Jones' motion *in limine* "to the extent that it seeks to preclude evidence of the [Jones'] Social Security disability benefits" although it granted his motion to otherwise preclude "comment or evidence" about "prior claims, settlement, or receipt of insurance or other benefits . . . ." To the extent that the trial court's written order conflicted with its oral rulings, the written order prevails. *See generally Machniak v. Commonwealth*, 351 S.W.3d 648, 652 (Ky. 2011) ("When

-13-

there is a conflict between a court's oral statements and the written judgment, the written judgment controls.").  The trial court had also ordered Jones to provide his SSD application if in his possession, but it declined to order Jones to sign an authorization so that defense counsel could obtain a copy of Jones' application.

During *voir dire*, defense counsel asked prospective jurors whether any of them had filed for disability or had family members who had filed for disability.  Jones' counsel asked to approach the bench, and the trial judge asked why defense counsel was asking the prospective jurors about disability.  Defense counsel explained Jones had filed for disability and was receiving it at the time of the accident.  But given the collateral nature of disability issues, the trial court permitted no other questions on the topic and told defense counsel to just get the juror numbers of those who had raised their hands and move on.

As Sturdivant points out, Jones' counsel asked Jones during direct examination whether he received Social Security disability benefits and Jones admitted that he was receiving such benefits at the time of the collision.  And from our review of the record, Sturdivant states correctly in his brief that the defense never told the jury that Jones' SSD benefits paid for treatment after the collision, and defense counsel never referred to the amount of Jones' SSD benefits.  But Jones claims that defense counsel placed undue emphasis on issues about him

receiving SSD beginning in *voir dire* and opening statement and continuing through proof and closing argument.

Defense counsel cross-examined Jones about his not providing the defense with a copy of his application for SSD benefits (which he claimed not to possess) nor signing an authorization for the defense to obtain such a copy. Jones objected. At the bench, defense counsel explained that Jones had been saying he was not trying to hide anything and that defense counsel wished to make the point that Jones could have requested a copy of the application. The trial judge pointed out that he did not make Jones sign an authorization and sustained the objection because of the collateral nature of the issue.

During closing argument, defense counsel argued in pertinent part:

This isn't a small injury or an insignificant condition he was dealing with before the accident. This is a serious thing. And then we all heard in 2009, the federal government termed him to be disabled. He was in so much pain he couldn't work. Now, I'm from Eastern Kentucky, if you all have not figured that out yet. I know things about people filing disability benefits. You don't get it for arthritis in your back. Okay? It's got to be a serious problem where somebody can make determination that you're in so much pain, you can't go to work and the government will pay you to stay home.

Defense counsel also asserted in closing that Jones "claimed over and over again that he wasn't trying to hide anything" but Jones did not share his SSD application with the defense as Jones said he did not have the application. Defense counsel

-15-

contended that Jones could have signed an authorization so that the defense could see what the application said about why Jones had filed for disability, especially since Jones asserted he was not hiding anything. Jones again moved for a mistrial, which the trial court denied while expressing hope that defense counsel would move on from that particular argument which it found to be very collateral.

Although some defense inquiry about Jones' seeking disability benefits was proper due to its relevance to determining whether his injuries arose from pre-existing conditions rather than the accident, we agree with Jones that defense counsel's statements about his receipt of SSD benefits went beyond the limits permitted by the trial court's pre-trial order and Kentucky precedent. Counsel's assertions in closing that he had personal knowledge about how SSD benefits worked and for what conditions one could receive them as a person from Eastern Kentucky is particularly troubling. *Triplett v. Napier*, 286 S.W.2d 87, 90 (Ky. 1955) (citation omitted) (Despite the great latitude afforded to counsel in making closing arguments, holding that counsel cannot refer to matters outside the record but must confine argument "to matters in issue and to facts shown by competent evidence, with proper inferences to be drawn therefrom. The personal experience related to the jury by counsel for appellee had no part or place in the argument on the matters at issue in the present case.").

Also problematic was defense counsel's reference to the SSA's determination of Jones' disability and discussion of how this meant Jones was in too much pain to do any work. Jones points out in his brief that another jurisdiction's courts have held determinations of disability for Social Security purposes depend on different standards and are not very helpful to assessing prior physical condition for tort claims. *See Evans v. Sisters of Third Order of St. Francis*, 506 N.E.2d 965, 969 (Ill. Ct. App. 1987) (in medical malpractice cases, SSA's and state agency's determinations of total disability were not relevant for determining plaintiff's physical condition prior to treatment as "a determination of total disability by these agencies does not necessarily indicate a total loss of all bodily movement and control" and so frequent references to the agencies' disability determinations "deprived the plaintiffs of a fair trial and constituted reversible error"); *Cargnino v. Smith*, 308 N.E.2d 853, 856 (Ill. Ct. App. 1973) (determination of total disability for Social Security and black lung benefits was not relevant to determining plaintiff's physical condition prior to accident and should be excluded under collateral source rule as "plaintiff's prior physical condition can be established without any reference to governmental agencies' standards for disabilities from unrelated causes or any reference to benefits which such agencies disburse.").

Sturdivant asserts that Kentucky courts apply a different rule than Illinois about admitting evidence of SSD determinations and benefits, citing *Peters v. Wooten*, 297 S.W.3d 55 (Ky. App. 2009). And he claims that no Kentucky case holds that "the admission of a Social Security disability award automatically violates the collateral source rule and constitutes reversible error." As Sturdivant points out, we recognized that the general rule against admitting evidence of collateral source benefits is subject to exceptions for malingering or to refute claims of financial hardship in order to prevent parties from misleading the jury. *Wooten*, 297 S.W.3d at 63. But though some evidence relating to seeking or receiving disability benefits may be relevant to addressing disputes about pre-existing injuries or whether another party's actions caused financial hardship, we do not read *Wooten* to allow for references to the SSA's total disability determination such as that which occurred in defense counsel's closing argument.

Even if other mentions of Social Security disability issues did not by themselves merit the extraordinary remedy of a mistrial, we conclude that the trial court erred in denying Jones' mistrial motion based on defense counsel's discussion of Social Security disability issues in closing. The cumulative effect of other errors, in combination with and culminating in problematic statements about SSD in closing argument, created a manifest necessity for declaring a mistrial. *See Roberts*, 599 S.W.3d at 853. Thus, the trial court abused its discretion in denying

Jones' mistrial motion lodged during the defense closing argument if not in denying those mistrial motions lodged earlier in trial.

In addition to its error in denying Jones' mistrial motions during trial, we also conclude that the trial court erred in denying Jones' motion for a new trial. We recognize that the trial court's ruling on Jones' motion for a new trial is subject to a significantly deferential standard of review, perhaps more deferential than that applied to a ruling on a mistrial motion. *See Jefferson v. Eggemeyer*, 516 S.W.3d 325, 337 (Ky. 2017) (a trial court's denial of a motion for new trial is presumed correct and should only be reversed for clear error, yet: "If, after review, the Court finds that the evidence and the jury's verdict are not reasonably related, the Court may find the trial court's denial of a party's motion for a new trial was an abuse of discretion and clearly erroneous.").

Despite the deferential standard of review, we conclude that the trial court erred in denying the motion for a new trial under the specific facts and circumstances of this case. Specifically, the repeated references to topics precluded by pretrial orders casts significant doubt on Jones receiving a fair trial. As discussed by the Kentucky Supreme Court in a case with repeated instances of failure to comply with the trial court's directives in closing argument, such conduct cannot be condoned. *See Risen v. Pierce*, 807 S.W.2d 945, 949 (Ky. 1991) (In reversing judgment based on jury verdict in part for counsel's repeated failure to

-19-

comply with trial court directives during closing argument, stating: "We recognize the difficult circumstance counsel imposed upon the trial court. Be that as it may, however, we cannot overlook such behavior as it is antithetical to a fair trial.").[7]

Jones moved the trial court for a new trial pursuant to Kentucky Rules of Civil Procedure (CR) 59.01 "because of irregularities in the proceedings and errors of law which occurred at trial, resulting in a verdict that was not supported by sufficient evidence." He also stated in his written motion that "CR 59.01(b) provides that a new trial may be granted for misconduct by the prevailing party." (Record, p. 871, also p. 4 of Tab C to Appellant's brief). So, he appeared to invoke CR 59.01(a)(b) and (f).[8] He also discussed case law about improper arguments and

---

[7] We recognize that the judgment in *Risen* was reversed in part because of an error in jury instructions in addition to the conclusion that improper comments in closing argument deprived a litigant of a fair trial. Although the majority opinion does not explicitly discuss whether the litigant requested declaration of a mistrial during trial or filed a post-trial motion for a new trial or both, a statement in the dissenting opinion indicates both declaration of a mistrial and grant of a new trial were sought: "Like the Court of Appeals, I attach great weight to the refusal of the trial judge to declare a mistrial and, even more importantly, to grant a new trial even after the jury's verdict in favor of the defendant became known." *Id.* at 950 (Spain, J., dissenting).

[8] CR 59.01 provides in pertinent part that a new trial on some or all issues may be granted for:

> (a) Irregularity in the proceedings of the court, jury or prevailing party, or an order of the court, or abuse of discretion, by which the party was prevented from having a fair trial.
>
> (b) Misconduct of the jury, of the prevailing party, or of his attorney.
>
> . . . .
>
> (f) That the verdict is not sustained by sufficient evidence, or is contrary to law.

-20-

references to excluded or extraneous matters meriting new trials in his written motion. *See generally Risen*, 807 S.W.2d 945*; Smith v. McMillan*, 841 S.W.2d 172 (Ky. 1992).

Jones' motion for a new trial afforded the trial court the opportunity to consider, with the benefit of hindsight, whether Jones received a fair trial. From our review of the recording of the hearing on the new trial motion, the trial judge expressed some doubts about whether Jones received a fair trial in light of defense counsel's repeated failures to comply with court orders. Yet the trial judge ultimately denied Jones' motion for a new trial because he believed that a new trial would not result in a more favorable outcome for Jones, especially if sequencing evidence were presented.

Like the Kentucky Supreme Court in *Risen*, we sympathize with the trial court's difficulties in dealing with the issues caused by defense counsel's repeated reference to matters which it ordered precluded. And we understand the trial judge's reluctance to re-try the case especially since the trial judge believed the outcome was unlikely to change. Nonetheless, we cannot let stand its judgment on the jury verdict where repeated violations of trial court orders and precedent resulted in Jones being deprived of a fair trial, regardless of whether any prejudice could be conclusively shown. *See Risen*, 807 S.W.2d at 949:

> While we cannot say with certainty that the improper
> argument affected the result, we cannot say it did not. A

> party aggrieved by egregious argument should not be required to demonstrate prejudice, ordinarily an impossible task, for to do so would in most cases render reviewing courts powerless to correct the error. Moreover, we take this opportunity to state that such conduct will not be tolerated.

In ruling on the motion for new trial, the trial court should have considered only whether the parties received a fair trial without speculating on what evidence might be presented in the new trial and what the ultimate outcome might be. After all, the baseline question in ruling on a motion for a new trial is whether *this* trial was fundamentally fair, not whether a future trial would likely be more or less advantageous to the requesting party.[9] Furthermore, we cannot wholeheartedly accept the trial court's assessment that the ultimate outcome (a jury verdict in favor of Sturdivant) would not change in a new trial if sequencing evidence was presented. Perhaps traffic sequencing evidence on retrial might somehow conclusively show that Sturdivant had a green light and Gumm did not when traveling through the intersection. Even so, this would not necessarily show that Sturdivant did not breach other duties defined in the jury instructions such as his duties to keep a lookout ahead, keep his vehicle under reasonable control, travel at a reasonable speed, and exercise ordinary care to avoid a collision. From our

---

[9] The listed grounds for filing a motion for a new trial in CR 59.01 all focus on what previously happened (such as misconduct or irregularities in proceedings) with the exception (not applicable here) of CR 59.01(g): "Newly discovered evidence, material for the party applying, which he could not, with reasonable diligence, have discovered and produced at the trial."

review of the record, it does not necessarily appear inevitable that a jury would find no breach of duties substantially contributing to causing the accident on Sturdivant's part. Even if it might appear unlikely that Sturdivant be found to bear the lion's share of comparative fault if he had a green light, one cannot lightly assume that a reasonable jury could not find him to have breached any duties at all which could have substantially contributed to causing the accident.

Given defense counsel's repeated violations of the trial court's orders *in limine*, we cannot say that the jury's determination that Sturdivant was not liable was not affected by irrelevant and prejudicial matters which could likely have prejudiced the jury against any finding for Jones. These matters, including suggestions that any damage award he received would be tax-free, suggestions of Jones being totally incapacitated before the collision based on his receiving SSD benefits, and seemingly drawing attention to matters excluded by trial court orders in order to suggest that Jones had something nefarious to hide, ultimately resulted in a fundamentally unfair trial.

Thus, we conclude that the trial court erred in denying Jones' motion for a new trial as well as in denying his mistrial motion despite any apparent lack of egregious errors by the trial court in handling other matters. We are aware that, unlike this case, other cases reversing for denial of motions for mistrial or a new trial often also involved significant other errors by the trial court, *see e.g., Risen*,

807 S.W.2d 945; *Roberts*, 599 S.W.3d 841. Nonetheless, under the unique facts and circumstances of this case, defense counsel's admitted **repeated** failures to comply with the spirit if not the letter of the trial court's order *in limine* resulted in Jones being deprived of a fair trial. Thus, Jones' motions for mistrial and for a new trial were erroneously denied. Other arguments raised by the parties in their briefs which are not discussed herein are lacking in merit or unnecessary to our resolution of this case.

## CONCLUSION

For the reasons stated herein, we reverse and remand for further proceedings in conformity with this Opinion. Upon remand, the trial court shall rule upon Jones' motion for sanctions as well as affording him the opportunity for a new trial.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Sandra M. Varellas
D. Todd Varellas
Lexington, Kentucky

BRIEF FOR APPELLEE:

Brad E. Moore
Kristin M. Lomond
Lexington, Kentucky