RENDERED:  DECEMBER 8, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0343-MR

JOHN MCGAUGHEY                                              APPELLANT

v.          APPEAL FROM WOODFORD CIRCUIT COURT
            HONORABLE KATHRYN H. GABHART, JUDGE
            ACTION NO. 19-CI-00157

JENNY WARNICK                                                APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; ECKERLE AND KAREM, JUDGES.

THOMPSON, CHIEF JUDGE:  John McGaughey appeals from an order of the

Woodford Circuit Court which denied his motion for a new trial.  Appellant argues

that he was entitled to a new trial due to attorney misconduct and because the trial

court erroneously allowed certain testimony into evidence.  We find no error and

affirm.

## FACTS AND PROCEDURAL HISTORY

On June 30, 2018, Appellant and Jenny Warnick were involved in a motor vehicle accident. At trial, Appellee claimed that while she was turning around in someone's driveway, she looked to her left and saw Appellant and his motorcycle on the ground. Her theory at trial was that Appellant lost control of his motorcycle while coming around a nearby curve, causing him to crash.

Appellant claimed that when he rounded the nearby curve, he saw Appellee's car in both lanes of the road. Appellant then claimed that he did not have room to maneuver around the vehicle; therefore, he chose to "lay his motorcycle down" to prevent a crash. Both parties agree that there was no collision between the two vehicles.

The jury eventually returned a verdict finding both parties fifty percent at fault. Appellant later filed a motion for a new trial alleging attorney misconduct and the improper inclusion of evidence. The trial court denied the motion and this appeal followed.

## STANDARD OF REVIEW

Kentucky Rules of Civil Procedure (CR) 59.01 states:

A new trial may be granted to all or any of the parties and on all or part of the issues for any of the following causes:

(a) Irregularity in the proceedings of the court, jury or prevailing party, or an order of the court, or abuse of

-2-

discretion, by which the party was prevented from having a fair trial.

(b) Misconduct of the jury, of the prevailing party, or of his attorney.

(c) Accident or surprise which ordinary prudence could not have guarded against.

(d) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice or in disregard of the evidence or the instructions of the court.

(e) Error in the assessment of the amount of recovery whether too large or too small.

(f) That the verdict is not sustained by sufficient evidence, or is contrary to law.

(g) Newly discovered evidence, material for the party applying, which he could not, with reasonable diligence, have discovered and produced at the trial.

(h) Errors of law occurring at the trial and objected to by the party under the provisions of these rules.

We review a trial court's determination that grounds for a new trial exist under the clearly erroneous standard. If such grounds exist, we then review the decision whether to grant a new trial for abuse of discretion. *Gibson v. Fuel Transport, Inc.*, 410 S.W.3d 56, 62 (Ky. 2013).

## ANALYSIS

Appellant's first argument on appeal is that Appellee's attorney referred to Appellant's vehicle as unit one, which had been prohibited via a motion

*in limine*.  Prior to trial, Appellant moved to prohibit the introduction of the police report created for this accident.  Appellant also moved to preclude any mention that Appellant was named as "unit 1" in the report and Appellee was listed as a witness.  Appellant believed that any reference to Appellant being named as "unit one" and Appellee being listed as a witness would cause the jury to infer that Appellant was the cause of the accident.  In addition, Appellant believed that some members of the jury who had been in an accident or were related to police officers would know that a person named as "unit 1" in a police report would be considered by the police as the cause of the accident.  This motion was granted.

During Appellant's cross-examination, trial counsel for Appellee, Bradford Breeding, questioned Appellant about the accident and previous statements he made to the officer who created the accident report.  Mr. Breeding began referencing Appellant's statements made during a deposition.  During the deposition, Appellant was asked about the accident report and references were made to him being "unit 1."  At trial, Mr. Breeding showed the deposition to Appellant and, in order to orient him to the section to which he was referring, stated that he was referring to the section where he was named as "unit 1."

Counsel for Appellant objected at the mention of "unit 1" and a bench conference was held.  Mr. Breeding was reminded not to refer to "unit 1."  The trial court also admonished the jury not to consider the last question asked by Mr.

Breeding. Mr. Breeding then continued with Appellant's cross-examination and again asked about statements he might have made to a police officer. During the course of answering the question, Appellant read a part of his prior deposition and stated he was described as "unit 1."

At this point another bench conference was held and Mr. Breeding stated he would move on to a different line of questioning. After the bench conference, the trial court gave another admonition to the jury. The court told the jury to disregard the part of Appellant's testimony where he read from his deposition and stated that any "reference to the term unit one carries no weight in this trial."

Appellant claims on appeal that when defense counsel used the term unit one and the elicited testimony where the term was used again, counsel was committing misconduct. Appellant claims that the term should not have been used at trial due to the motion *in limine* and that counsel purposefully caused it to be said in front of the jury. Appellant believes that this caused the jury to infer that Appellant was the cause of the accident.

We believe the use of the term "unit 1" on two occasions, once by defense counsel and once by Appellant, does not amount to attorney misconduct. First, the statements were fleeting and admonitions were given by the court. Second, defense counsel moved on after the second use of the term and it was

never mentioned again.  Third, we do not agree that the term "unit 1" is so common as to improperly influence the jury to infer that Appellant was the cause of the accident.  While the use of the term was improper, we do not believe it influenced the jury to such a degree as to require a new trial.  *See Risen v. Pierce*, 807 S.W.2d 945, 949-50 (Ky. 1991).  The trial court did not err in denying the motion for a new trial based on this issue.

Appellant's second argument is that he was denied a fair trial because he was not given certain data from Appellee's expert witness during discovery.  Appellant categorizes this as attorney misconduct, for failing to turn over discoverable material, and as the trial court's abuse of discretion, in allowing Appellee's expert to testify over Appellant's objection.

Prior to trial, both parties revealed their experts and expert reports were exchanged.  Later, counsel for Appellant requested an IDRR spreadsheet from Appellee's expert.[1]  It appears as though the information contained in the spreadsheet was sent to Appellant's counsel, but not the spreadsheet itself.  Appellant's counsel again asked for the spreadsheet.  Appellee's counsel discussed the issue with his expert and the creator of the software used to create the spreadsheet, and believed that releasing the spreadsheet itself would violate a

---

[1] The experts in this case used a specific computer program to help reconstruct the accident. This spreadsheet was used in those reconstructions.

copyright and licensing agreement. Appellee's counsel relayed this belief to Appellant's counsel.

On the second day of trial, Appellant's counsel raised the issue with the trial court. Counsel informed the court that Appellee's counsel had not provided all the expert data she had requested. Appellee's counsel indicated that he had provided everything possible and was unclear on what was still outstanding. Appellee's counsel believed Appellant was still requesting the IDRR spreadsheet data. As counsel for Appellant, counsel for Appellee, and the trial judge discussed the issue, it was clear that there was some confusion over what was being requested. It was decided that the two experts would discuss the issue in front of the judge and the parties, but outside of the presence of the jury.

This discussion later took place, and it was revealed that what Appellant was actually seeking was information regarding a "Realworks file." This file was related to data used to create 3D reconstruction photographs of the accident scene. Appellee's expert stated that this data could be turned over. Later in the day, Appellant's counsel informed the court that a file purporting to be the Realworks file was sent to her, but it could not be opened. Appellant's expert also believed the file was too small to be the Realworks file.[2] Appellant's counsel indicated that she did not object to the jury seeing the reconstruction photographs,

_____

[2] The file could not be opened, but the size of the file that was sent could be determined.

but did not want them to be included into evidence. The trial court agreed and allowed Appellee to show the pictures to the jury, but did not allow them into evidence.[3]

We find no error here. When discussing this issue, the trial judge indicated that she believed the lack of turning over the Realworks file was due to a miscommunication between the attorneys and was not intentional. We agree. It was not until the two experts discussed the issue with each other on the record that the exact nature of the discovery request was revealed. Appellee then attempted to turn over the data, but was unsuccessful. In addition, the trial court granted Appellant's request to preclude the 3D images from being included into evidence. As this was an unintentional error, Appellant's request for exclusion of some evidence was granted, and Appellant's counsel thoroughly cross-examined Appellee's expert, we agree with the trial court that a new trial was unnecessary.

Appellant's final argument on appeal is that the trial court erred in allowing certain testimony from lay witness, Jason DeBold. Mr. DeBold could not appear live at trial; therefore, portions of his deposition were read to the jury. Mr. DeBold witnessed Appellant riding his motorcycle just before the accident.

---

[3] On appeal, Appellant claims that his trial counsel moved to exclude the entirety of the testimony of Appellee's expert; however, Appellant provides no citation to the record where this request was made and we were unable to locate such a motion. The only request made regarding Appellee's expert was that the 3D images not be allowed into evidence, and this was granted.

Appellant sought to exclude portions of the testimony where Mr. DeBold stated he believed Appellant was speeding because the motorcycle made a sound that seemed as though it was accelerating. Mr. DeBold also stated that Appellant seemed to be "out of control" as he rounded the curve just before the accident site. Appellant believes this was improper opinion testimony.

We disagree and find no error. A lay witness can testify as to his or her personal observations, including the speed of a vehicle. *Davidson v. Commonwealth*, 548 S.W.3d 255, 260 (Ky. 2018); *Clement Bros. Constr. Co. v. Moore*, 314 S.W.2d 526, 530 (Ky. 1958). Mr. DeBold's statements that Appellant was speeding were based on what he saw and heard. In addition, his testimony that Appellant seemed to lose control of the motorcycle was also based on what he personally observed. Allowing this testimony into evidence was not error.

## CONCLUSION

Based on the foregoing, we find no error. The trial court properly denied Appellant's motion for a new trial.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Kirsten Daniel
Louisville, Kentucky

BRIEF FOR APPELLEE:

Bradford L. Breeding
G. Kirk Smith
Megan E.H. Jordan
London, Kentucky